## THE UNITED STATES, PLAINTIFFS IN ERROR v. PHINEAS BRADLEY, SURVIVING ADMINISTRATOR OF DAVID OTT DECEASED.

An action was instituted on a joint and several bond given by H. O. and V. to the United States of *North* America; which, after reciting that H. had been appointed paymaster of the rifle regiment of the army of the United States; conditioned that if H. shall " well and truly execute, and faithfully discharge, according to law, and to instructions received by him from proper authority, his duties as paymaster aforesaid; and he, his heirs, executors or administrators shall regularly account when thereto required, for all moneys received by him from time to time as paymaster aforesaid, with such person or persons as shall be duly authorized and qualified on the part of the United States for that purpose; and moreover pay into their treasury such balance as, on a final settlement of the said John Hall's accounts, shall be found justly due from him to the said United States, then the obligation should be null and void, and of no effect, otherwise to be and remain in full force and virtue."

The act of congress of the 24th of April 1816 provides, " that all officers of the pay, commissary and quartermaster's department shall, previous to entering on the duties of their respective offices, give good and sufficient bonds to the United States fully to account for all moneys and public property which they may receive, in in such sums as the secretary of war shall direct." H. became largely indebted to the United States for money advanced to him as paymaster, and suit was brought against the administrators of O. one of his sureties. The bond not having been in its very terms in conformity with the provisions of the law, the sureties claimed that they were not bound by it, because of this variance; and because the United States had no right to take any other bond but that prescribed by the statute.

By the Court. So far as the condition of the bond required the paymaster to account for moneys received by him, it substantially follows the provisions of the law; and if the bond be not clearly void, from its not being in all respects in conformity with the law, the United States are entitled to recover.

This case differs from the case of the United States v. Tingey, 5 Peters 115, as there was in that case an averment, not denied, that the bond was obtained from the obligors by extortion and oppression, under colour of office. This must be taken to be a bond voluntarily given by the paymaster and his sureties, for a lawful purpose; and for the faithful performance of the duties of paymaster.

No rule in pleading is better settled, or upon sounder principles, than that every plea, in discharge or avoidance of a bond, should state positively and in direct terms, the matter in discharge or avoidance. It is not to be inferred, arguendo, or upon conjectures.

In the case of the United States v. Tingey, 5 Peters 115, it was held, that the United States being a body politic, as an incident to their general right of sovereignty, have a capacity to enter into contracts, and take bonds in cases within the sphere of their constitutional powers, and appropriate to the just exercise of those powers; through the instrumentality of the proper department to which those powers are

[United States v. Bradley.]

confided, whenever such contracts or bonds are not prohibited by law; although the making of such contracts, or taking such bonds, may not have been prescribed by any pre-existing legislative act. From the doctrine here stated, the court have not the slightest inclination to depart: on the contrary, from further reflection, they are satisfied that it is founded upon the soundest principles of law, and the just interpretation of the constitution.

That bonds and other deeds may, in many cases, be good in part, and void for the residue, where the residue is founded in illegality, but not malum in se; is a doctrine well founded in the common law, and has been recognized from a very early period. The doctrine has been maintained, and is settled law, at the present day; in all cases, wh⟨⟩ the different covenants or conditions are severable, and independent of each other, and do not import malum in se.

There is no solid distinction in cases like the one before the court, between bonds and other deeds containing conditions, covenants or grants, not malum in se, but illegal at the common law; and those containing conditions, covenants or grants illegal by the express prohibitions of statutes. In each case the bonds or other deeds are void, as to such conditions, covenants or grants, which are illegal; and are good as to all others which are legal and unexceptionable in their purport. The only exception is, when the statute has not confined its prohibitions to the illegal conditions, covenants or grants; but has expressly, or by necessary implication, avoided the whole instrument to all intents and purposes.

The act of congress of 1816 no where declared that all other bonds not taken in the prescribed form shall be utterly void; nor does such an implication arise from any of the terms contained in the act, or from any principles of public policy which it is designed to promote. A bond may, by mutual mistake or accident, and wholly without design, be taken in a form not prescribed by the act. It would be a very mischievous interpretation of the act to suppose, that under such circumstances it was the intendment of the act that the bond should be utterly void. Nothing but very strong and express language should induce a court of justice to adopt such an interpretation. Where the act speaks out, it would be our duty to follow it: where it is silent, it is a sufficient compliance with the policy of the act to declare the bond void, as to any conditions which are imposed upon a party beyond what the law requires. This is not only the dictate of the common law, but of common sense.

The appointment of a paymaster is complete, when made by the president and confirmed by the senate. The giving a bond for the faithful performance of his duties is a mere ministerial act, for the security of the government; and not a condition precedent to his authority to act as a paymaster.

The misdescription of the corporate or politic name of the plaintiffs in the bond, by calling them " The United States of *North* America," instead of America, is cured by the averment of identity in the declaration.

THE United States, in August 1825, instituted an action of debt in the circuit court of the district of Columbia, in the county of Washington, against Phineas Bradley and Andrew Way, administrators of David Ott; upon a joint and several bond to the United States of North America, executed by John Hall, David Ott and Nicholas Vanzandt, on the 26th day of May 1819. The condition of the bond was, " that whereas the above bounden John Hall is ap-

[United States v. Bradley.]

pointed paymaster of the rifle regiment, in the army of the United States aforesaid ; now, if the said John Hall shall well and truly execute, and faithfully discharge, according to law, and to instructions received by him from proper authority, his duties as paymaster aforesaid, and he, his heirs, executors or administrators, shall regularly account, when thereto required, for all moneys received by him from time to time, as paymaster aforesaid, with such person or persons as shall be duly authorized and qualified on the part of the United States for that purpose ; and moreover pay into their treasury, such balance as, on a final settlement of the said John Hall's accounts, shall be found justly due from him to the said United States, then this obligation shall be null, void and of no effect : otherwise, to be and remain in full force and virtue."

To this declaration the defendants pleaded six several pleas, and issues were joined on the second, fourth and sixth.  The third plea alleged that the defendants ought not to be charged with the debt, by virtue of the supposed writing obligatory, because John Hall was appointed paymaster long after the 24th of April 1816, and after the passing of the act of congress, entitled "an act for organizing the general staff, and making further provision for the army of the United States ;" and that this was the only law authorizing or requiring a bond to be given by him to the United States as paymaster, or otherwise, or authorizing any person to take such a bond; and that the said John Hall, as such paymaster, did not, after being appointed paymaster, or at any time give any bond whatsoever to account for all moneys and public propety which he might receive, in such sums as the secretary of war should direct, or otherwise, in pursuance and execution of the said act of congress; and that the said John Hall had not, at any time after he was appointed such paymaster as aforesaid, any right, title or authority whatsoever, as such paymaster, or in virtue of such his appointment, or otherwise howsoever, to receive any money or property of the United States, or any public money or public property whatsoever, to be accounted for in pursuance and execution of the said act of congress, or otherwise, to the said United States or to the government, or any officer of the government of the said United States, or to any other person or persons whatsoever, in the name, or for or in behalf of the said United States ; nor in any manner to enter on the duties of his said office or appointment of paymaster, or to do, perform or execute the duties, or any of the duties of the same.

VOL. X.—2 T

To this plea the United States replied, that by an act of congress, entitled "an act for organizing the general staff, and making further provision for the army of the United States," passed on the 24th of April 1816, it was, among other things, enacted, that all officers of the pay, commissary and quartermaster's department, should, previous to their entering on the duties of their respective offices, give good and sufficient bonds to the United States, fully to account for all moneys and public property which they might receive, in such sums as the secretary of war might direct; and that after the passage of the said law, and while the same was in full force and effect, on the 26th of May 1818, the said John Hall was duly appointed paymaster in the rifle regiment, in the army of the United States, and in consequence of his appointment as paymaster aforesaid, and with the intent of complying with the act of congress aforesaid, and by the direction of the secretary of war of the United States, he, the said John Hall, with David Ott, now deceased, and the said Nicholas B. Vanzandt, did execute and deliver, in due form of law, the said writing obligatory in the said defendant's plea mentioned; and the same was then and there accepted by the said United States; and the said John Hall, after the same was so accepted as aforesaid, and under and by virtue of his appointment as aforesaid, did enter upon the performance of the duties of paymaster as aforesaid, and did from time to time receive from the United States, as such paymaster as aforesaid, sundry large sums of money, amounting altogether to more than        dollars, to be accounted for by him as such paymaster as aforesaid; and the said United States say, that of the moneys so received by him the said John Hall, of the United States as aforesaid, the sum of        dollars was altogether unaccounted for by him, the said John Hall; and that upon a final settlement of the accounts of him, the said John Hall, as paymaster aforesaid, by the proper officers of the government of the United States, there was found to be due from the said John Hall to the United States on account of moneys received by him of the United States as paymaster aforesaid, the sum of        dollars, which said sum the said John Hall, in his lifetime, and the said defendants since his death altogether failed to pay to the said United States.

The defendants demurred to this replication, and assigned for causes of demurrer:

1. That the bond, with the conditions thereof, was not taken in

pursuance of the directions, nor under the authority of the act ; but was essentially different in its purport and effect from the same.

2. That in the replication, the plaintiffs have not averred nor shown any authority for taking the bond with the condition, nor for the delivery and acceptance of the same ; but they have shown the same was not taken and delivered and accepted as such bond.

3. That the bond, as described and set forth in the declaration, varies from the supposed writing obligatory, in this, that it purports to be an obligation to the United States, without ascertaining what United States ; and further, purports to be the simple obligation of the said David Ott to pay the United States the sum of twenty thousand dollars : whereas the supposed writing obligatory purports to be an obligation to some states, described as the United States of North America ; and further purports to be an official bond to the last named states, executed by one John Hall, the said David Ott, and one N. B. Vanzandt, the two last as sureties for said Hall's performance of certain official duties to the last named states, as set forth in said condition ; and further purports to be a bond which the government of the United States of America, or any officer or agent of said government, had no power or authority to take or accept in behalf of the last named United States.

4. That it does not appear in the replication that the bond had been delivered by the obligors, or any of them, or accepted or received by any person on behalf of the last named United States, by any lawful authority ; but the contrary appears.

5. That it does not appear from the replication that John Hall had, at any time after his said supposed appointment to the office of paymaster, any right, title or authority to enter on the duties of the said office, or to receive, in virtue of such appointment, any money or property of the said United States, or any public property or public money whatever ; to be accounted for to the said United States, or to the government, or any officer or agent thereof, or otherwise to perform and execute the duties, or any of the duties of such office : nor that he had lawfully and officially received any such property or money, and failed to account for the same, or otherwise broken the said condition ; but the contrary appears.

6. That the bond and condition are illegal and defective in form and substance, and altogether void and contrary to law.

The fifth plea set forth that the defendants ought not to be charged, because John Hall was appointed a paymaster a long time

after the act of congress of the 24th of April 1816, entitled "an act for organizing the general staff," &c., and that at the time of his appointment that act was and yet is in force, and was and yet is the sole and only law, rule and regulation, or authority, under which any bonds to be given by John Hall to the United States as paymaster, or in any manner, can be taken by the United States, or by any officer of the same in the name and behalf of the United States; and was and is the only law, &c. by which his accountability as paymaster for any money or property of the United States by him received was or is prescribed, regulated or governed; and that the said John Hall did fully account for all moneys and public property by him as such paymaster as aforesaid, and after he was appointed such paymaster, received in such sums as the secretary of war, in the said act of congress mentioned, did, at any time after the said John Hall was so appointed as aforesaid, direct to be so received by the said John Hall as aforesaid, according to the tenor and effect, true intent and meaning of the said act of congress.

To this plea the United States replied, that John Hall, after being appointed paymaster of the rifle regiment in the army of the United States, did, from time to time, receive as such paymaster large sums of money, amounting to          dollars, to be accounted for by him; and of this amount the sum of          dollars was altogether unaccounted for by him: and that upon a final settlement of his accounts as paymaster, by the proper officers of the treasury, he was found indebted          dollars, which he and the defendants have failed to pay.

The defendants rejoined, stating that John Hall did not receive the sums of money mentioned in the replication as paymaster in such sums as the secretary of war had, at any time at or before the receipt of such sums, respectively directed; according to the provisions, true intent and meaning of the said act of congress, in the three preceding pleas, and in the replications thereto mentioned, prescribing the bonds to be given by the officers therein mentioned; but the said sums of money, amounting to the said sum of          dollars as aforesaid, were received by the said John Hall after being appointed such paymaster as aforesaid, without any direction or order of the said secretary of war, directing the same or any of them to be so received: and so the defendants say that the said David Ott in his lifetime was not, nor were or are the defendants, since his death, liable, bound, or in any manner accountable to the said United States, by the force and effect of the said act of congress and writing

[United States v. Bradley.]

obligatory, for the failure of the said John Hall to account and pay to the said United States the said sums of money, or the said sum of ——— dollars so found due from the said John Hall to the said United States, on account of the said large sums of money received by him, as in the said replication mentioned.

The United States demurred to this rejoinder.

The circuit court decided that the pleas and the demurrers of the defendants were sufficient in law to bar the recovery of the United States; and gave judgment for the defendants.

The United States prosecuted this writ of error.

The case was argued by Mr Swann and Mr Butler, attorney-general, for the United States; and by Mr Key and Mr Jones, for the defendant.

The United States insisted on the following points:

1. The bond in question is substantially conformable to the requirements of the statute; and having been executed with the intent of complying therewith, is good as a statutory bond.

2. If it varies from the statute in any material particular, it is yet good, because given voluntarily and for a lawful purpose.

Mr Swann, contended, the bond which had been executed by the defendant's intestate, was substantially a compliance with the provision of the act of congress of April 24, 1816. If it went beyond the precise directions of the law, it stipulated for no more than was within the duties of the officer by whom it was given.

It was a voluntary bond, and was not coerced from the obligor. He was at liberty to accept or refuse the office; his sureties were at liberty to execute the bond or to refuse. Even if it is not a bond under the law, it is good and valid as a voluntary obligation.

The replication states that the bond was executed under the belief that it was a compliance with the law, and that as such it was received by the United States. This was voluntary. It has been decided that the United States may take a voluntary bond.

As to the objection that the bond was taken to the United States of North America, there cannot be a valid exception on this ground.

We are the United States of North America. There are no other United States in North America. Cited 1 Peters's C. C. R. 46; 3.

Wash. C. C. R. 10; 1 Gallison's Rep. 86; 5 Peters's Rep. 116, 388; 11 Wheat. 184.

Mr Jones, for the defendant, stated, that he would confine his argument to the act of congress of the 24th of April 1816, and to the powers claimed for the officers of the United States to take any bond they thought proper to ask.

It is conceded that when Hall was appointed, he was required to execute the bond ; and was never called upon to execute any other bond conformably to the act of congress.

The bond taken, substantially varies from the proper bond ; and if the securities shall be held liable on it, it will be a case where, notwithstanding the act of congress requires a particular obligation for the performance of certain duties, it is in the power of the officers of the treasury to demand another and a different bond. Cited the fifth section of the act of congress, vol. 5, L. U. S. 81.

The section referred to requires that the officer, before entering on his duties, shall give full and sufficient bond for the execution of those duties. There is nothing in the law which gives the option to any officer to take any other bond, or to exercise any powers not granted : and there is therefore a prohibition from so doing.

If a man is commanded to do an act, he is prohibited from doing any other. If it is an imperative duty of an officer to do a particular act ; shall he do an act in disobedience of the law ? Every principle which applies to the obligation of contracts forbids this.

Another remark—The secretary at war is commanded to take a particular bond, and the paymaster is commanded to give it before he enters on the duties of his office : and this is a condition precedent to his entering on those duties as an officer. Until he has performed the condition, the officer is in abeyance.

The only power to take a bond is that given by the act of congress, and no other power can be exercised than that delegated by the act; and they are limited by it. The officers of the United States act merely ministerially, and can only take the bond established by the law.

Look at the consequences of authorizing officers of the United States to take bonds at their discretion, in the form they may establish. They could require any form they considered proper, and insist on any terms they might determine. If such bonds can be taken, where are the limitations imposed by law on their powers. If

this can be done, the officers may raise a revenue at their will, from those who will surrender themselves to such powers.

The effects of such a principle would be fatal to the government, as it is inconsistent with its purposes and its objects.

Voluntary bonds are distinguished from those which are coerced, by the circumstance that the first are given to secure some certain right, and they may be taken in the exercise of powers, which are to carry the laws into execution, where no particular form is prescribed. In such circumstances bonds may be taken, provided the person who takes them is so authorized. But the officers of government are not general agents, with full powers as such agents. Their powers are prescribed : and in this case they are expressly defined, and the bond was not given according to the requirements of the law.

It is an absurdity to require a person to give a bond for property and money he was not authorized to receive. The office the government imposed by law, on the paymaster, was that he should account for money which he received regularly, under officers authorized to pay it to him. Suppose, after he had given a bond in the regular form, other property than that which he had a right to receive as paymaster had been put into his hands, he would not have been accountable for it on his bond : no such liability could exist. This was decided in United States v. Jones, Administrator, 8 Peters 399. There is no difference between the cases. In the case cited, the contractor was not held liable for moneys paid to him on account of duties not performed within the district for which he was appointed. Yet the contractor voluntarily received the money from the treasury.

Is this bond within the requisition of the statute ? It is said the bond need not be in the words of the act of congress ; but that it is sufficient, if it is substantially the same. If this means that the obligation is not undefined, changed or altered, and the legal effect of it is the same as the statute requires, and in full conformity with the law : this is admitted. But it is denied that such are the stipulations in this instrument. The obligations contained in it go beyond the directions of the law, and call for duties and acts not recognized by it. It imposes a different mode of executing the duties of paymaster. This is a violation of the law. They are of a different kind from those required of him by the statute. This will appear by an examination of the instrument, and a comparison of the provisions of the act of congress with it.

[United States v. Bradley.]

This is the case of sureties, and the court will look strictly at the instrument; and will not sustain it if it is not legal. It is not a case in which a court of equity will reform the instrument, to operate on these who stand in this situation.

The question of great importance is, whether the officers of the government can impose upon those employed under them, obligations which are not known to the law. The constitution forbids this: and it is of the highest interest that powers of this kind shall not be sanctioned. It is most important that the duties of an officer shall not be moulded by any but those who establish and regulate these duties, by statute.

The common law is not to be looked into for analogies to support such assumptions of power. The authority of those who hold public trusts in the United States, depends on the precise provisions of statutes. It is among the objects, and is entirely consistent with the principles of the common law in England, to sustain the authority of the government, and to supply it with all necessary powers for its support and action. But in the United States, these purposes and principles are supported by express enactments.

Mr Key, also for the defendant in error.

The bond in this case is taken under the statute authorizing the appointment of paymaster, and substantially varies from the bond required by the statute.

It does not cover all the responsibilities required by the statute—accounting for property is omitted. And it extends to other responsibilities not required by the statute. The bond enjoins that he shall well and truly discharge all his duties as paymaster, the law only required him to give bond to account; and he has (as the law shows) many other duties. So also, as to his accounting with any persons duly appointed, and to his obeying instructions, &c.

The secretary of war has required and taken this as the offical bond of the paymaster. If the bond conforms to the law, he had authority; but if not, and he had no authority to take it—it is void.

Two questions, therefore, arise.

1. Where a statute prescribes the bond to be taken by an officer, can he take any other?

2. If he does, is it void?

In our government every officer must show a power for every official act. A power, either expressly given by the constitution or

[United States v. Bradley.]

some law; or necessarily implied from a power so given. If the power is not thus given, it is retained; or, in other words, prohibited.

If an officer does an act prohibited, it is void. There is no difference between an act expressly prohibited, and an act not issuing from powers given, where the officer is restricted to the powers given. Where is the power given to take this bond? Not in this law, nor in any other. Not in the constitutional power given to the president to execute the laws; for here he violates or supersedes the law.

It was settled in Tingey's case, that where the law of congress prescribes no bond, the executive officer may, under the general power to see that the laws are executed, take a bond. Why? Because it is "within the sphere of its constitutional powers, and appropriate to the just exercise of those powers." But is this so where the legislature prescribes the bond? There it is not within its sphere; nor appropriate to supersede the statute, and take a different bond. Little v. Barreme, 2 Cranch 177.

It is also settled, in Tingey's case, that "no officer has a right to require a bond different from that prescribed by the statute." Why? "Because," (say the court) "that would be not to execute, but to supersede the law." If the bond be void when *required* contrary to the statute, is it not as void when *taken* contrary to the statute? The officer must have a right to take it. If he has a right to *take* it; surely he has the right, and it is his duty to require it. And would not *taking* it, supersede the law as effectually as *requiring* it?

There is no power then in any law, or in the constitution either, to take or require this bond.

2. What is the effect of it?

It is said to be good because given voluntarily; or, that it is good as far as it conforms to the statute, and only void for the residue. This doctrine is inferred from two dicta: one in 1 Peters's C. C. Rep. 46; the other in 1 Gallison 86.

These cases, and the cases cited, apply only to cases where the objections went to the nature of the stipulations, not to the capacity of the obligee to take, as here. Where the bond is taken between individuals, under no restraint as to power to make the contract, no matter how voluntary, there must still be an officer having power to take *voluntary bonds* for the United States; which there is not. Nor is it good in part; for not being authorized, and therefore (according to our constitution) prohibited from taking a bond with a requisition not in the statute, the bond containing such requisition is wholly

[United States v. Bradley.]

void. And this is shown by the following cases : 3 Wash. C. C. Rep. 10 ; United States v. Hipkins, 2 Hall's Law Journal ; 5 Mass. 314 ; 3 Mass. 105 ; 7 Mass. 98 ; 5 Pick. 227 ; 3 Call 421 ; 2 Wash. 189 ; 6 East 110 ; Carter 230 ; Cro. Eliz. 529, 737 ; 2 And. 56, 57, 108, 152 ; 2 Saund. 59, 60, in notes ; 19 Johns. Rep. 233.

Again, it is said it was intended to conform to the statute. The intent cannot make that legal which is illegal. 2 Cranch 177 ; 2 Call 510 ; 9 Cranch 39 ; 3 Mass. 105 ; 5 Peters 350.

But at all events, Tingey's case shows, that if such a bond is required it is void. And here the United States say in the replication, it was required ; or was directed by the secretary of war. It is therefore void.

Mr Butler, attorney-general, in reply.

Upon the constitutional question raised by the counsel for the defendant, no dispensing powers are claimed for the officers of the government ; and it is admitted that if congress have really passed a law prescribing the exact form of a bond to be taken, the executive ought to conform to it : and that if an officer materially departs from that prescribed form, and compels a paymaster to execute a bond in a different form, the bond so executed will be void.

But the United States are not prepared to admit that this bond will be void, though materially variant from the form prescribed by the statute, if executed voluntarily by a paymaster, and taken in good faith by the executive. On the contrary it will be attempted to be shown,

1. That if the bond substantially conforms to the provisions of the law, it is valid, and may be enforced.

2. That although it is materially variant from those provisions, if given voluntarily, and for useful and proper purposes, it is yet good.

3. That although one part of the condition of a bond is illegal, it is void only pro tanto ; and is good for all parts of the condition which are conformable to law.

1st. It is contended that the bond in this case is substantially conformable to the statute.

The precise form of the condition of the bond is not given in the statute, nor is this often done. The general tenor and the legal effect are given ; and any bond which will produce and secure

the object of the law; which will stipulate for the faithful per-formance of the legal duties of the officer, in whatever form of words; will be a good and a valid bond under this statute.

Some facts are to be attended to which are in the record. It is admitted Hall had actually been appointed a paymaster in the army. This is in the pleadings; and thus there is an end to the allegation in the argument that he had not been paymaster. He must have been appointed according to the constitution and to the law.

The next admission is, that the bond was executed with intent to comply with the statute.

The third fact is, that Hall, after he had executed the bond, entered on the performance of his duties. He became a paymaster as to all third persons, the United States and his sureties.

The fourth fact is, that Hall received the money from the United States; and that he has failed to account for the amount so received.

The fifth fact to be observed is, that the condition contains two clauses: one, the general stipulation for the faithful performance of the duties of paymaster; the other, special provisions to account for money, property, &c. The counsel for the defendant admit, that the same clause does not go beyond the requirement of this act in effect; though it goes into specifications of details, all of which are included in the words, regularly to account, &c.

It is contended, that the terms of the condition extend only to the faithful performance of the duties of a paymaster; and do not include skill in their execution. The words of the bond are, to account "according to law." This is in effect a conformity to the statute. In truth, all the duties required of the officer come within the words "regularly account, well and truly execute, and faithfully discharge."

The duties of a paymaster are included in the bond, and no more than these duties; and to this extent the sureties are bound. The subjection of a paymaster to the rules and articles of war, are liabilities for which the sureties are not answerable; they are responsible for his duties only.

Thus the bond is substantially a compliance with the provisions of the law: but it is contended that if it exceeds those provisions, and requires that duties shall be performed which should be executed, as it was given voluntarily, it is valid, and binds the sureties.

The decision of this court, relied upon in the case of the United States v. Tingey, does not deny, but on the contrary it sustains the

[United States v. Bradley.]

principle which the United States assert in support of the claim in this case. In that case, the pleadings admitted the bond was "extorted;" but here there is no such admission; on the contrary, the bond of Hall, and his sureties, was voluntarily given; with a view to comply with the act of congress.

2d. The bond was executed for a lawful purpose. If congress had required such a bond, it would have been entirely proper and consistent with the duties of the officer.

3d. It is said there is no obligee competent to take the bond; and that the constitution and the law do not allow its being taken; nor are powers to take voluntary bonds given: that the executive had authority to take a proper bond, but none to take any other. All this is denied by the United States.

To assert these positions is to say, that a bond for acts which are proper is void; and yet what are the dangers to arise from such a bond? No arguments against the instrument, on the ground of dangers, when none can arise, are available. Nothing was required which was not proper, which was not lawful; and which the officers of the government ought to have a full right to insist upon. Does the direction to take a particular bond imply a prohibition to take another bond not inconsistent with the prescribed bond? This is contended for by the counsel for the defendant in error.

The United States have established a war department; and the secretary of war has full authority to carry into execution all the purposes of the government, the supervision of which is within that division of the administration of public affairs. No prohibition exists in reference to the action of the officer in charge of that department; if the same is considered proper for the accomplishment of legitimate objects.

Is it true that if the secretary of war omits, for any reason, to take security from a public officer, in the precise form which a statute prescribes, that the United States shall lose the benefit of that security, if given voluntarily, and for a lawful and proper purpose: a purpose that really effectuates the law; and the only objection to which is, that it is more beneficial to the United States than the one prescribed? If this be the law, the United States is punished for the fault and mistake of their officer.

The cases cited by the counsel for the defendant do not support the principles claimed for them

The third question for the determination of the court is, whether

if the condition of the bond is in part illegal and void ; which is denied; is the whole void ?

The answer must be in the negative. There is no act of congress prohibiting such a bond, nor is there an act declaring bonds not conforming to this statute void. The rule of law is, that in all cases in which the condition of a bond can be severed, it is good for that part which is legal, and only void for that part which is illegal. This rule always applies, except where a statute declares the whole instrument void. 2 Marshall's Com. Law Rep. 61 ; 12 Wheat. 149.

The cases cited on the other side do not impugn these principles. Sheriffs' bonds, taken in a form different from that which the statute authorized, are expressly avoided by 23 Hen. 6, ch. 10. So are appeal bonds, in wrong penalties ; and which are not devisable.

Mr Justice STORY delivered the opinion of the Court.

This is a writ of error to the circuit court of the District of Columbia, for the county of Washington.

The original suit was debt, on a bond given to the United States by John Hall, Daniel Ott and Nicholas B. Vanzant on the 26th, of May 1818, the condition of which, after reciting that Hall was appointed paymaster of the rifle regiment in the army of the United States, was as follows : "now, if the said John Hall shall well and truly execute, and faithfully discharge according to law, and to instructions received by him from proper authority, his duties as paymaster aforesaid ; and he, his heirs, executors or administrators shall regularly account, when thereto required, for all moneys received by him from time to time as paymaster aforesaid, with such person or persons as shall be duly authorized and qualified on the part of the United States for that purpose, and moreover pay ino their treasury such balance as on a final settlement of the said John Hall's accounts shall be found justly due from him to the said United States ; then this obligation shall be null and void, and of no effect, otherwise to be and remain in full force and virtue."

In the court below, the defendant pleaded six several pleas, and issues were joined on the first, second, fourth and six pleas. To the third and fifth pleas the United States replied. The defendant demurred to the replication to the third plea, and rejoined to the replication to the fifth plea ; to which the United States demurred.

[United States v. Bradley.]

Upon these demurrers the court below gave judgment in favour of the defendant.

Upon these pleadings two questions have been made and argued at the bar. 1st. Whether the bond is in conformity to the requirements of the act of the 24th of April 1816, ch. 69, for organizing the general staff, and making further provision for the army of the United States. 2d. If not, whether the bond is wholly void; or void only so far as it is not in conformity to that act.

The act (section 6) provides " that all officers of the pay, commissary and quarter-master's department, shall, previous to entering on the duties of their respective offices, give good and sufficient bonds to the United States fully to account for all moneys and public property which they may receive, in such sums as the secretary of war shall direct." It is plain that the condition of the bond is not, in its very terms, in conformity with this provision. But the argument on the part of the United States is, that though in terms it varies from the act; yet, inasmuch as all the duties required of the paymaster by law begin and terminate in matters of account; that in substance the condition includes no more than what the prescribed terms of the act contemplate.

In our view of the case it is wholly unnecessary to decide this question; because the only breach alleged is the non-accounting for, and non-payment of moneys due to the United States by Hall; upon a final settlement of his accounts. So far as the condition of the bond requires Hall to account for moneys received by him, it substantially follows the provisions of the act of 1816 : and if the bond be not wholly void, it is clear that the United States are entitled to recover upon the present pleadings in whatever way the first question may be decided.

The second question, therefore, is that to which the attention of the court will be addressed. Upon the face of the pleadings this must be taken to be a bond voluntarily given by Hall, and his sureties. There is no averment that it was obtained from them by extortion or oppression under colour of office, as there was in the United States v. Tingey, 5 Peters 115. On the contrary, both the third and fifth pleas are wholly barren of any averments on the subject of the giving of the present bond. All they assert in substance is, that Hall never gave any such bond as is required by the act of 1816 ; and that the act of 1816 was the only law regulating the bonds of paymasters; with some collateral averments not material to be

[United States v. Bradley.]

here mentioned. Now no rule of pleadings is better settled, or upon sounder principles, than that every plea in discharge or avoidance of a bond, should state positively and in direct terms the matters of discharge or avoidance. It is not to be inferred, arguendo; or upon conjectures. Indeed, both these pleas are open to the objection of being merely argumentative; and are wholly destitute in the technical precision necessary for pleas in avoidance or discharge. The replication of the United States to the third plea does, however, exclude, so far as that plea is concerned, any inference of extortion or oppression, colore officii; for it avers that the bond was given with the intent of complying with the act of congress, and by the direction of the secretary of war.

It may be added, that the bond is not only voluntary, but for a lawful purpose; viz. to insure a due and faithful performance of the duties of paymaster, a circumstance which must repel any supposi-of an oppressive or unjust design.

But passing from these considerations, the question which first arises is, whether a voluntary bond taken by the United States, for a lawful purpose, but not prescribed by any law, is utterly void. This question was elaborately argued in the case of the United States v. Tingey, 5 Peters's Rep. 115; and upon full consideration, it was there held by this court, that the United States being a body politic, as an incident to their general right of sovereignty, have a capacity to enter into contracts, and take bonds in cases within the sphere of their constitutional powers, and appropriate to the just exercise of those powers; through the instrumentality of the proper department to which those powers are confined; whenever such contracts or bonds are not prohibited by law; although the making of such contracts, or taking such bonds, may not have been prescribed by any pre-existing legislative act. The court laid down this as a general principle only, without (as was then said) attempting to enumerate the limitations and exceptions, which may arise from the distribution of powers in our government; and from the operation of other provisions in our constitution and laws.

But the court, in applying the principle to the case then before them, further added, " we hold that a voluntary bond taken by authority of the proper officers of the treasury department, to whom the disbursement of public moneys is entrusted, to secure the fidelity in official duties of a receiver, or an agent for the disbursement, of public moneys, is a binding contract between him and his sureties,

[United States v. Bradley.]

and the United States; although such bond may not be prescribed or required by any positive law.   The right to take such a bond is, in our view, an incident to the duties belonging to such a department ; and the United States having a political capacity to take it, we see no objection to its validity in a moral or a legal view."

From the doctrine here stated, we have not the slightest inclination to depart : on the contrary, from further reflection, we are satisfied that it is founded upon the soundest principles of law, and the just interpretation of the constitution.   Upon any other doctrine, it would be incompetent for the government, in many cases, to take any bond or security for debts due to it, or for deposits made of the public money ; or even to enter into contracts for the transfer of its funds from one place to another, for the exigences of the public service, by negotiable paper or otherwise ; since such an authority is not expressly given by law in a vast variety of cases.   Yet, in Dugan v. The United States, 3 Wheat. 172, 4 Cond. Rep. 223, and in the Postmaster-General v. Early, 12 Wheat. 136, 6 Cond. Rep. 480, this right of the government was treated as unquestionable, and belonging to its general functions, as an appropriate incident.

The United States, then, having, in our opinion, a capacity to take a voluntary bond in cases within the scope of the powers delegated to the general government, by the constitution, through the instrumentality of the proper functionaries to whom these powers are confided ; this consideration disposes of the whole of that part of the argument, and the cases cited in support of it, which are founded upon the distinction between bonds which are given to parties having a capacity to take ; and bonds, which are given to parties, who have no such capacity : the former may be good in part ; the latter are wholly void.

That bonds and other deeds may, in many cases, be good in part, and void for the residue, where the residue is founded in illegality, but not malum in se; is a doctrine well founded in the common law, and has been recognized from a very early period.   Thus, in Pigot's case, 11 Co. Lit. 27 b., it was said, that it was unanimously agreed in 14 Hen. 8, 25, 26, that if some of the covenants of an indenture, or of the conditions indorsed upon a bond are against law, and some are good and lawful, that in this case the covenants or conditions which are against law, are void ab initio ; and the others stand good.   And, notwithstanding the decision in Lee v Coleshill, Cro. Eliz. 529 ; which, however, is distinguishable, being founded on a

[United States v. Bradley.]

statute; the doctrine has been maintained, and is settled law at the present day in all cases where the different covenants or conditions are severable, and independent of each other, and do not import malum in se; as will abundantly appear from the case of Newman v. Newman, 4 M. & Selw. 66, and the other cases hereafter stated; and many more might be added.

But it has been urged, at the bar, that this doctrine is applicable only to cases where the case stands wholly at the common law, and not where the illegality arises under a statute; and this distinction derives countenance from what was said in Norton v. Simmes, Hob. Rep. where the distinction was taken between a bond made void by statute, and by common law; for (it was there said) upon the statute of 23 Hen. 6, ch. 9, " if a sheriff will take a bond for a point against that law, and also for a debt due, the whole bond is void; for the letter of the statute is so.   For a statute is strict law: but the common law doth decide according to common reason: and having made that void, which is against law, lets the rest stand, as in 14 Hen. 8, 15."

In the case of Maleverer v. Redshaw, 1 Mod. Rep. 35, which was debt, upon a bail bond, Mr Justice Twisden said, he had heard lord Hobart say, " that the statute, i. e. 23 Hen. 6, ch. 9, is like a tyrant; when he comes, he makes all void.   But the common law is like a nursing father, makes void only that part where the fault is, and preserves the rest."   But Mr Justice Twisden added, that lord Hobart put this doctrine upon the ground that the statute of 23 Hen. 6, ch. 9, had expressly declared that if any of the sheriffs, &c., should take any obligation in any other form, by colour of their office, that then it should be void.(a)   The case in Hobart's Reports, was put by the court expressly upon this distinction.   And it was well remarked by Mr Justice Lawrence, in Kerrison v. Cole, 8 East's Rep. 236, that this case is easily reconcilable with the general principle : for sheriff's bonds are only authorized to be taken with a certain condition : and, therefore, if they are taken with any other condition, they are void in toto, and cannot stand good in part only.   But that does not apply to different and independent covenants and conditions, in the same instrument ; which may be good in part, and bad in part : and so it was held by the whole court in that case ; and notwithstanding the instrument, (a bill of sale and mort-

(a) See 2 Saund. Rep. 55 ; Ib. 59, Williams's note (3).

[United States v. Bradley.]

gage of a ship), was, by statute, declared to be utterly null and void, to all intents and purposes;" yet it was held, that a covenant in the same instrument, to repay the money lent, was good as a personal covenant. The same doctrine was held in Wigg v. Shuttleworth, 13 East's Rep. 87 ; How v. Synge, 15 East's Rep. 440 ; Mouse v. Leake, 8 Term Rep. 411 ; Greenwood v. The Bishop of London, 5 Taunt. Rep. 727, S. C. 1 Marsh. Rep. 292. In this last case, the court took notice of the true line of distinction between the cases, viz. between those cases, where the statute had declared the instrument taken in any other form, than that prescribed by the statute, to be utterly void ; and those cases, where it had declared the instrument void only as to the illegal act, grant, or conveyance. It was the case of conveyance affected with simony, so far as the next presentation was concerned ; but conveying the advowson in fee. On this occasion the court said, " there can be no doubt, that the conveyance of an advowson in fee, which is of itself legal ; if it be made for the purpose of carrying a simoniacal contract into execution, is void as to so much as goes to effect that purpose ; and if the sound part cannot be separated from the corrupt, it is altogether void. It is not, as in the case of usury, and some others, avoided by the positive and inflexible enactment of the statute ; but left to the operation of the common law, which will reject the illegal part, and leave the rest untouched, if they can be fairly separated." Here, the doctrine was applied directly to the very case of a statute prohibition.

But the case of Doe dem. Thomson v. Pitcher (6 Taunt. R. 359; S. C. 2 Marsh R. 61) contains a still more full and exact statement of the doctrine. It was a case supposed to be affected by the prohibitions of the statute of charitable uses; 9 Geo. 2, ch. 36. Lord Chief Justice Gibbs, in delivering the opinion of the court, addressing himself to the argument, that if the deed was void as to part, it must be void as to the whole ; said : "if the objection had been derived from the common law, it is admitted that would not be the consequence. But it is urged that the statute makes the whole deed void. As the counsel for the plaintiff puts it, (a) there is no difference between a transaction void at common law, and void by statute. If an act be prohibited, the construction to be put on a deed conveying pro-

(a) Instead of these words in 2 Marshall's Reports, p. 69, the words are, "The truth is" there is no difference, &c.

[United States v. Bradley.]

perty illegally is, that the clause which so conveys it is void equally, whether it be by statute or common law.    But it may happen that the statute goes further, and says that the whole deed shall be void to all intents and purposes : and when that is so, the court must so pronounce, because the legislature has so enacted ; and not because the transaction prohibited is illegal.    I cannot find in this act any words which make the entire deed void, &c.    I think this grant of that interest in land, which by the terms of the grant is to be applied to a charitable use, is void ; and that the deed, so far as it passes other lands not to a charitable use, is good." Such is the clear result of the English authorities.

In this court, a similar doctrine has been constantly maintained. It was acted upon in the case of The Postmaster-General v. Early (12 Wheaton's Rep. 136).    It was taken for granted in Smith v. The United States (5 Peters's Rep. 293); where the objection, indeed, was not taken : but the bond was not in exact conformity to the statute (act of the 16th of March 1802, ch. 9, sect. 16), under which it was given by a paymaster.    It was also directly before the court in Farrar and Brown v. The United States (5 Peters's Rep. 373); where the bond, taken under the act of the 7th of May 1822, sect. 1, wholly omitted one of the clauses required by the statute to be inserted in the condition.    The court there entertained no doubt as to the validity of the bond, and only expressed a doubt whether a breach which was within the direct terms of the omitted clause ; and yet which fell within the general words of the inserted clause, could be assigned as a good breach under the latter.    But, if the bond, being a statute bond, was totally void, because the condition did not conform to all the requirements of the act ; it would have been wholly useless to have discussed the other questions arising in the cause.    Upon the whole, upon this point we are of opinion that there is no solid distinction in cases of this sort between bonds, and other deeds containing conditions, covenants or grants, not malum in se, but illegal at the common law ; and those containing conditions, covenants or grants, illegal by the express prohibitions of statutes.    In each case the bonds or other deeds are void as to such conditions, covenants or grants, which are illegal ; and are good as to all others which are legal and unexceptionable in their purport.    The only exception is, when the statute has not confined its prohibitions to the illegal conditions, covenants or grants ; but has expressly, or by necessary implication, avoided the whole instrument to all intents and purposes.

[United States v. Bradley.]

It has been urged, however, in the present case, that the act of 1816, ch. 69, does, by necessary implication, prohibit the taking of any bonds from paymasters other than those in the form prescribed by the sixth section of the act; and therefore that bonds taken in any other form are utterly void. We do not think so. The act merely prescribes the form and purport of the bond to be taken of paymasters by the war department. It is in this respect directory to that department; and doubtless it would be illegal for that department to insist upon a bond containing other provisions and conditions differing from those prescribed or required by law. But the act has no where declared that all other bonds, not taken in the prescribed form, shall be utterly void: nor does such an implication arise from any of the terms contained in the act, or from any principles of public policy which it is designed to promote. A bond may, by mutual mistake or accident, and wholly without design, be taken in a form not prescribed by the act. It would be a very mischievous interpretation of the act to suppose, that under such circumstances it was the intendment of the act that the bond should be utterly void. Nothing, we think, but very strong and express language, should induce a court of justice to adopt such an interpretation. Where the act speaks out, it would be our duty to follow it: where it is silent, it is a sufficient compliance with the policy of the act, to declare the bond void, as to any conditions which are imposed upon a party beyond what the law requires. This is not only the dictate of the common law, but of common sense.

We think, then, that the present bond, so far as it is in conformity to the act of 1816, ch. 69, is good; and for any excess beyond that act, if there be any (on which we do not decide), it is void, pro tanto. The breach assigned is clearly of a part of the condition (viz. to account for the public moneys), which is in conformity to the act; and therefore action is well maintainable therefor. The case of The Supervisors of Alleghany county v. Van Campen (3 Wend. Rep. 48), proceeded upon grounds of a similar nature.

Before concluding this opinion, it may be proper to take notice of another objection raised by the third plea, and pressed at the argument. It is that Hall was not entitled to act as paymaster until he he ', given the bond required by the act of 1816, in the form therein prescribed; and that not having given any such bond, he is not accountable as paymaster for any moneys received by him from the government. We are of a different opinion. Hall's appointment, as paymaster, was complete when his appointment was duly made by

[United States v. Bradley.]

the president, and confirmed by the senate.    The giving of the bond was a mere ministerial act for the security of the government; and not a condition precedent to his authority to act as paymaster. Having recei.ed the public moneys as paymaster, he must account for them as paymaster.    Indeed, the condition of the bond having recited that he was appointed paymaster of the rifle regiment, he and his relatives are estopped to deny the fact: and by the terms of their contract they undertake that " he shall regularly account, when thereto required, for all moneys received by him as paymaster aforesaid."

The misdescription of the corporate or politic name of the plaintiffs in the bond, by calling them "The United States of *North* America," instead of America; is cured by the averment of identity in the declaration: and, indeed, it has not been insisted on at the argument.

Upon the whole, we are of opinion that the third and fifth pleas, upon which the circuit court gave judgment in favour of the defendant are bad in law; and therefore the judgment ought to be reversed, and judgment thereon be entered in favour of the United States: and the cause remanded to the circuit court for further proceedings.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel ; on consideration whereof, it is the opinion of the court that there is error in the judgment of the said circuit court in adjudging that the pleadings by the said defendants, in the same cause pleaded, and the matters and things there contained, are sufficient in law to bar the said United States from having and maintaining their action aforesaid.    And it is thereupon ordered, and adjudged by this court, that the judgment of the said circuit court be, and the same is hereby reversed ; and this court proceeding to render such judgment as the said circuit court should have rendered in the premises, it is further considered and adjudged by this court, that the third and fifth pleas, so as aforesaid pleaded by the said defendants, are not sufficient in law to bar the said United States of their action aforesaid, against the said defendants ; wherefore the said United States ought, notwithstanding the pleas aforesaid, to recover their debt and damages on occasion of the premises.    And it is further ordered and adjudged by this court that the cause be remanded to the said circuit court for further proceedings thereon, according to law.