McBRIDE et al. v. FARRINGTON.

(Circuit Court of Appeals, Second Circuit.   December 4, 1906.)

No. 5.

INDIANS—INDIAN LANDS—LEASES—VALIDITY.

>    Rev. St. § 2116, provides that no purchase, grant, lease, or other conveyance of land from any Indian nation or tribe of Indians shall be valid, unless the same be made by treaty or convention entered into pursuant to the Constitution; but Act Cong. March 1, 1889, c. 333, 25 Stat. 784, repealed all laws previously existing intended to prevent the Chickasaw Nation from lawfully making leases for mining coal for a period not exceeding 10 years. *Held*, that leases executed by the national secretary of the Chickasaw Nation, in October, 1890, for the mining of coal and other minerals, were valid, so far as they authorized the mining of coal for a period not exceeding 10 years.

>    [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indians, § 45.]

>    Wallace, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of New York.

For opinion below, see 131 Fed. 797.

T. C. Becker, for plaintiff in error.

Frank Brundage, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge.   The plaintiff concedes that, unless he can establish the proposition that the leases executed by the national secretary of the Chickasaw Nation (October 2 and October 20, 1890) were wholly void, so that there was a "total failure of consideration,"

he cannot recover. He contends that they are void because of the provisions of section 2116, Rev. St. U. S., which reads:

"No purchase, grant, lease or other conveyance of land, or any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution," etc.

The section, however, was modified, before the making of these leases, by Act March 1, 1889 (25 Stat. 784, c. 333), which repealed all laws theretofore enacted to prevent the Indian nation in question or any other from lawfully making leases for mining coal for a period not exceding 10 years. The leases in question are for the mining of coal, iron, petroleum, oil, gas, asphaltum, and other minerals. If void as to the other minerals, they are apparently valid as to the coal. For what length of time they purported to run is not shown by the record. If for an indefinite time, the terms of the act would no doubt restrict them to 10 years. It is difficult to see how such leases, which apparently conveyed some rights for a restricted period, can be held to be so utterly valueless as to constitute an entire failure of consideration. These reasons lead to an affirmance.

Some reference has been made to Act June 28, 1898 (30 Stat. 495, c. 517) ; but, since that was not passed until two years after the leases were assigned to the Wisconsin corporation, it has no bearing on the question here presented.

WALLACE, Circuit Judge (dissenting). I think the judgment should be affirmed, but I do not concur in the opinion of the court. I think the leases were void because the statute declares such leases void, and the repealing act authorizing 10-year leases for mining coal does not change the terms or effect of the original statute. It is well settled that when a conveyance or contract contains conditions, some of which are legal and others illegal, and they are severable and separable as respects consideration and performance, the latter may be disregarded and the former enforced. But the exception to this principle is equally well settled. As was said by Mr. Justice Storey in United States v. Bradley, 10 Pet. 363, 9 L. Ed. 448:

"The only exception is when the statute has not confined its prohibitions to the illegal conditions, covenants, or grants, but has expressly, or by necessary implication, avoided the whole instrument to all intents and purposes."

The leases here are indiscriminately for the mining of other minerals, as well as coal, and it does not appear that they were not for a period exceeding 10 years. If they had been for that time only, they would, in my judgment, have been void by the terms of the original statute.

The case has been argued at the bar as though the action were one by the creditors of a Wisconsin corporation to charge the defendant with individual liability as a stockholder under certain provisions of the Statutes of Wisconsin of 1898, viz., sections 1753 and 1773. An analysis of the complaint, however, shows that it proceeds upon the theory of fraudulent representations made by the defendant, by which the plaintiffs were induced to expend moneys and furnish labor and

materials for the Wisconsin corporation, and thereby sustained damages. The complaint states the following averments.

"That the defendant and certain other persons in 1897 organized a mining corporation under the laws of the state of Wisconsin, whereof the amount of the capital stock was fixed at $1,500,000, divided into shares of the par value of $10 each; that the defendant subscribed for 22,220 shares of the capital stock, and various other persons subscribed and agreed to pay for certain other shares; that neither the defendant nor any of the other persons ever paid 20 per centum of the capital stock of the corporation, nor was that amount ever paid in any way, but that the corporation issued and delivered the 22,220 shares subscribed for the defendant without any consideration; and that said issue of stock to the defendant and all the issues of stock by the corporation to the shareholders thereof were fictitious, and were issued for a pretended and valueless assignment of certain oil and mining leases in Indian Territory, which were valueless or of little value, and were known to be by the defendant and the other subscribers at the time they subscribed for and received the issue of stock."

The complaint then alleges that the defendant and other directors of the corporation fraudulently and falsely represented to the plaintiffs that the corporation had large pecuniary means and valuable property; that upwards of $1,000,000 worth of its stock at par had been subscribed for by persons who were pecuniarily able to pay for same, and some other shares had been paid for in cash; that in fact all the capital stock that had been subscribed for had been issued and delivered without consideration other than the transfer to said corporation of said valueless oil and mining leases and other representations of the defendant were untrue; that thereupon the plaintiffs, being deceived by said misrepresentations, were induced to and did expend money, perform work, and furnish materials for the corporation, and were induced to and did give credit to the corporation in the belief of the truth of the representations stated; and that the corporation and all of its shareholders, except the defendant, are wholly insolvent, and the liability of the corporation to plaintiffs is due and unpaid.

The court found as facts, among other things, that upon the organization of the corporation and in October, 1896, the corporation issued 141,990 of the 150,000 shares of capital stock to a trustee representing the defendant and other beneficiaries, and received in payment therefor the assignment of certain charters or leases procured from the Chickasaw Nation of Indians, granting the privilege of mining for coal, petroleum, and other minerals on certain lands within the territory of that nation; that the assignments of the leases were in good faith estimated by the directors and officers of the corporation as more than equal to the par value of the capital stock; that the trustee thereafter duly transferred the stock to the corporation, and in consideration thereof the corporation issued 100,000 shares thereof to the beneficiaries of the trustee, including 22,220 shares to the defendant. The court also found that the defendant had no personal knowledge as to any expenditures of money, performance of work, or furnishing of materials for the corporation by the plaintiffs; that no statements or representations were made by the defendant, or any others, to induce the plaintiffs to enter into the contract; and that the plaintiffs were not induced to expend any moneys or perform any labor or furnish any materials for the corporation, or to give credit to the corporation

by any false or fraudulent statement or representation made to them by the defendant or the officers or directors of the corporation.

It is contended by the plaintiffs in error that upon the facts found there should have been a judgment for the plaintiffs by force of section 1773 of the Wisconsin Statutes of 1898. This section, after providing that in stock corporations the first meeting may be held at any time after one-half of the capital stock has been subscribed, reads as follows:

"No such corporation shall transact business with any others than its members until at least one-half of its capital stock shall have been duly subscribed and at least 20 per centum thereof actually paid in; and if any obligation shall be contracted in violation hereof the corporation offending shall have no right of action thereon; but the signer and signers of the articles and the subscriber and subscribers for stock transacting such business or authorizing the same, or having knowledge thereof, consenting to the incurring of any debt or liability, as well as the stockholders then existing, shall be personally liable upon the same."

The argument for the plaintiffs in error is that the charters or leases transferred to the corporation in payment of its capital stock were void, because of the law of Congress found in section 2116 of the Revised Statutes of the United States; that the transfer of these void leases was not a payment to the corporation in property, such as is authorized by section 1753 of the Wisconsin Statutes of 1898; and that consequently the 20 per centum required by section 1773 of the Wisconsin Statutes of 1898 had not been paid in.

Assuming, for present purposes, that the leases were void, and that when the debt or liability of the corporation to the plaintiffs was incurred the 20 per centum of the capital stock had not been paid in, I can see no ground upon which the plaintiffs were entitled to recover. As I understand the terms of section 1773, no liability rests upon a stockholder unless he has consented to the incurring of the liability sued on with knowledge that the requisite payment of 20 per centum has not been made. The meaning of the section is to make a stockholder liable to the same extent and under the same conditions as a signer of the articles or a subscriber for stock. There is no finding by the court that the defendant knew of the incurring of any liability to the plaintiffs, but the finding explicitly negatives the fact. It follows that, so far as the case was based on any statutory liability of the defendant, the plaintiffs were not entitled to recover, and the judgment was correct.

Irrespective of this consideration, however, the action was one for fraudulent representations, and the plaintiffs were not entitled to recover without proof of actual fraud. The allegations of fraud were found against the plaintiffs. By the Code of Civil Procedure of this state (section 541) there was a failure of proof which was fatal to any recovery by the plaintiff. Where fraud is alleged as the basis of the action, the law will not permit a recovery by proof of a cause of action upon a contractural liability. Degraw v. Elmore, 50 N. Y. 1; Barnes v. Quigley, 59 N. Y. 265. It would have been error to allow an amendment of the complaint changing the cause of action to one on contract.

For these reasons, I think that plaintiffs were not entitled to recover, and that judgment was properly ordered for the defendant.