### JOSEPH BOWMAN *v.* THE TOWN OF BARNARD.

*Constables.　Selectmen to require Bonds.　Towns liable for neg-*
*lect, before bonds are required.　Evidence.*

A Constable derives his official powers, from his election and the statute defining his powers, and he is not required to give bonds, until the selectmen of the town specify the amount, name the securities and request the due execution of the bonds, and he can execute the duties of the office, until these steps are taken, and the request is made; hence, he is authorized to make an attachment, and the town is responsible for his neglect to deliver property, thus attached, on the execution when demanded.

Property attached on *mesne* process, is by statute held to respond the judgment, and the officer is entitled to the custody and possession of the same; therefore, in a suit, against the town, for the neglect of the constable, so to hold the property, it is not competent, for the town in mitigation of damages, to show "that the creditor may, still, by a new process or new execution, obtain satisfaction of his debt," for the creditor has a right to proceed against the specific property attached until his judgment and execution is satisfied.

TRESPASS ON THE CASE, for the official default of Lucius Freeman, constable of the town of Barnard, in not keeping certain pearlash, attached by him upon a writ in favor of the plaintiff against Joseph B. Danforth and Moses Montague.

Plea, the general issue and trial by jury.

On trial, the plaintiff gave in evidence the original writ in his favor, against Danforth and Montague, and the officers return thereon. The writ bore date, March twenty-second, 1848, and it appeared from the return, which was signed by Lucius Freeman, as constable, that it was served March twenty-second, A. D. 1848, by attaching thirteen barrels of pearlash, as the property of the defendants therein.

Bowman *v.* Barnard.

It was conceded, that judgment was rendered in favor of the plaintiff, in that suit, as alledged in the declaration.

The plaintiff also gave in evidence the execution, in that suit, dated June 18, 1849, with an indorsement thereon, that it was received by Hiram Aikens, constable, July 11, 1849, and an indorsement of *nulla bona* August 16, 1849. The plaintiff also proved, that Lucius Freeman was elected constable of Barnard, at a legal town meeting, duly warned, and held March 7, 1848.

Hiram Aikens, the constable to whom the execution was delivered, testified, that, on the 12th day of July, 1849, he demanded of Freeman, the pearlash attached on the original writ; Aikens then holding the execution above described—and that it was not delivered to him. And it was further proved that said pearlash was of much greater value than the amount of said execution.

The defendants then offered to prove, that Lucius Freeman, who was elected constable, March 7th, 1848, did not give a bond, as constable, until after he had made service of the writ in favor of the plaintiff, as above stated, and that the plaintiff upon delivering that writ to Freeman, knowing that he had not given a bond as constable, took from Freeman a writing, that he would faithfully perform his duty as constable, in relation to this attachment, and answer for all neglect. To this testimony the plaintiff objected, and it was excluded by the court. To which decision the defendants excepted.

The defendants then gave evidence tending to prove, that during all the time, from July 11th, 1849, to February or March, 1850, Joseph B. Danforth, the execution debtor above named, was possessed in his own right of attachable personal property, such as horses, cattle, &c., to an amount exceeding four hundred dollars, and more than sufficient to have secured and paid the judgment in favor of this plaintiff; that all this was well known to the plaintiff and his agent; and that after the constable Aikens had demanded the pearlash of Freeman, July 12th, 1849, as above stated, Aikens called upon the plaintiff and his agent for instructions, in reference to doing any thing further with the execution, and that they gave him no instructions to attach property, and thereupon the return of *nulla bona* was made as above stated, and no further steps were taken by the plaintiff towards securing the said judgment. The defendants requested the court to charge the jury,

that they were entitled to consider this testimony, in mitigation of damages;—that the plaintiff could not recover in this suit the full amount of his judgment against Danforth and Montague, if by ordinary diligence on his part, he might have collected the whole amount of his judgment from Danforth, as the testimony tended to prove; that if they found that Danforth, on the 11th day of July, 1849, and from thence all the time until Feb., 1850, was possessed of personal property in his own right, to an amount which the testimony on the part of the defendants tended to prove—and more than sufficient to pay and satisfy the judgment above described, and this was well known to the plaintiff, but he wholly neglected to cause his execution to be levied thereon, or in any manner to collect the same from said property, he could recover no more than nominal damages in this suit.

But the court directed the jury to return a verdict for the plaintiff, for the full amount of his judgment against Danforth and Montague, above described.

To which the defendants excepted.

*Washburn & Marsh* for defendants.

1. Until Freeman gave the bond required by statute, he was not constable *de facto*, even so as to render the town responsible for his defaults in reference to business intrusted to him by one certainly knowing the facts.    Comp. St. 116 § 27.

In this respect, the authority of a constable differs from that of a deputy sheriff.    The deputy sheriff is vested with power to act by his deputation; and it is optional with the sheriff, whether to require a bond or not.    Comp. St. 97 § § 5, 6.

It is not, then, a case within the judgment in the case of *Ferris* v. *Smith*, Chittenden Co., Dec. term, 1851, where the right to act vests from the moment of election; but it is precisely analogous to the class of cases recognized in that case,—where the right rests upon compliance with the statute requisites.

2. The testimony offered by the defendants further tended to prove, that the plaintiff acted with full knowledge of the facts, and that, when he delivered the writ to Freeman for service, he required, and received from Freeman *a written obligation that he would faithfully perform his duty as constable, in relation to the attachment, and would answer for all neglect.*    This was a direct

recognition of the absence of liability on the part of the town, and an acceptance of a personal liability, merely on the part of Freeman.

Even if the liability of the town existed, it was competent for plaintiff to *waive* that liability, and rely upon the personal obligation of Freeman. This being a question of *intent,* is to be determined from a consideration of the acts of the parties; and the testimony excluded was legitimate evidence upon this point. Whether this was the intent of the plaintiff, or whether he intended to receive a cumulative security merely, is not an inference of law, but of fact; and any testimony is admissible, which has any tendency to prove the fact.

3. The jury should have considered, in mitigation of damages, the facts proved in reference to the neglect of the plaintiff to levy his execution upon the property of the debtors—although he might have done so. He could at any time, within seven months, have secured the amount of his judgment against them.

The action is *case,* brought to recover *damages* for the officer's misconduct,—leaving to the plaintiff still the right to recover his debt against the original debtor; and the defendants have at common law, the right to give in evidence all facts, tending to show what damage the plaintiff really sustained. *Bounafous* v. *Walker,* 2 T. R. 126. *Treas. of Vt.* v. *Weeks,* 4 Vt. 223. *Kidder* v. *Barker,* 18 Vt. 454. *Ives* v. *Strong,* 19 Vt. 546.

The case, in this respect, should be governed by the same rule of law, as applied in determining in an action upon a recognizance for an appeal, whether or not the plaintiff has sustained intervening damages. In that case, the value of the plaintiff's chance of obtaining payment of his debt by pursuing any other remedy, is to be considered in mitigation of damages. *Holmes* v. *Woodruff,* 20 Vt. 97.

The whole case stands thus:—the plaintiff delivered his execution to Freeman at a time when he *knew* that Freeman had not executed the bond required by statute—he received from Freeman his *personal* obligation, to perform faithfully his duties—and he omitted wholly to collect his debt from the debtors, when he might have done so. Neither considerations of equity, or law, entitle him to recover.

*Tracy, Converse & Barrett* for plaintiff.

1. Towns are liable in the first instance for the defaults of their constable. *Mc Gregor* v. *Walden*, 14 Vt. 450. *Bramble* v. *Poultney*, 11 Vt. 208.

Towns are liable for all such *defaults* and *neglects* as would make the constable liable. Rev. Stat. 89, § 27.

Freeman was constable, *de facto*, before giving bonds, and whatever he did as an officer *de facto*, is good and binding on the public, and on every one who may be party to any proceeding, or interested in any official act of his.

The bond was for the security and indemnity of the town, and for them alone. No one but the town could maintain a suit on the bond. *Middlebury* v. *Nixon*, 1 Vt. 232. The town might therefore dispense with it altogether, and no one could interfere or complain.

The giving of a bond was not necessary to constitute him constable, unless the town chose to vacate the office by appointing another for that reason. *Nason* v. *Dillingham*, 15 Mass. 170.— *Bush et al.* v. *Collins*, 7 Johns. R. 549. *Buckman* v. *Ruggles*, 15 Mass. 181. *Marbury* v. *Madison*, 1 Cranch R. 138. *Craig* v. *Norfork*, 1 Mod. 122. *Hale* v. *Cushing*, 2 Greenl. R. 218. *Jones* v. *Gibson*, 1 N. H. 266. *Mc Gregor* v. *Batch*, 14 Vt. 428.

If the constable however, was only one *de facto*, and not one *de jure*, until he gave a bond, the town should be held liable for his official delinquencies. It was their *fault* that he was so. Freeman himself could not escape liability on that ground, neither can the town. *Johnston* v. *Wilson*. 2 N. H. 202.

Freeman, after serving the writ, did give bonds, and it is to be inferred they were such as the law requires, and that the bond covered the whole year, and all defaults and neglects, whether happening before or after giving the bond. *Colgate et al.* v. *Hill*, 20 Vt. 56. *Fletcher* v. *Austin et al.*, 11 Vt. 447.

2. The fact, that the plaintiff took a writing from the constable, that he would faithfully perform his duty as constable, could not alter the case. It was just what the law imposed without the writing, and in no sense altered the liability of the constable or the town. If it did impose an additional liability on the constable, how could that affect the ordinary liability of the town?

3. That Danforth had property, can make no difference. The property, attached on the writ, was that with which the judgment

was to be satisfied. It is to be presumed the constable had the property in his hands, and if he had not, he is liable to account for it. And the statute provides that the property attached, shall be held to respond to the judgment. Rev. Stat. 182, § 19; also p. 179 § 2; p. 181 § 16. *Bacon* v. *Lincoln,* 2 Cush. 124.

The plaintiff has a right to pursue the property attached, and it is his duty to do so. He is under no obligation to pursue other property. *Ladd* v. *Blunt,* 4 Mass. 402. 1 Swift's Dig. 798.

Where property attached is receipted, and is suffered to go back into the hands of the debtor, the liability of the receiptor, depends upon the liability of the officer. *Lowry* v. *Stevens et al.,* 6 Vt. 113. *Allen* v. *Butler et al.,* 9 Vt. 122. *Lowry* v. *Cady et al.,* 4 Vt. 504. *Spencer* v. *Williams,* 2 Vt. 209. *Allen* v. *Carty,* 19 Vt. 65. " The attachment makes the officer liable at all events " for the value of the property attached, providing the plaintiff is " diligent in obtaining a judgment and execution, and delivering " the latter to the officer. *Phillips* v. *Bridge,* 11 Mass. 242.

If an officer attach property, and fails to satisfy execution that is seasonably put into his hands, his liability is the amount of the execution and interest. *Sanburn* v. *Emerson* 12 N. H. 57. *Maxfield* v. *Scott,* 17 Vt. 634. *Fairfield* v. *Baldwin,* 12 Pick. R. 388.

The fact, that the debtor is *solvent,* is not admissible in mitigation of damages, in a suit against sheriff for the property attached. *Tyler* v. *Ulmer,* 12 Mass. 163. Nor can a deduction be made for expense, that might have been incurred in keeping the property. *Higgins* v. *Kendrick,* 14 Maine R. 83.

The opinion of the court was delivered by

Isham, J. The object of this suit, is to recover damages which the plaintiff claims to have sustained by the neglect of one Lucius Freeman, elected as constable of that town on the 7th of March, 1848.

We learn from the case, that a writ was issued by the plaintiff against J. B. Danforth and others, on which a quantity of pearlash was attached by Freeman, as constable. It is not disputed in the case, but that a judgment was duly rendered in the suit upon which the attachment was made. That the property attached, was duly charged on the execution, and that Freeman by whom the attachment was made, neglected to deliver the property to respond the judgment recovered.

Neither is it disputed but that Freeman was duly elected constable of the town, and that in every respect he has conformed to the requirements of law, except that no bond had been given by him, as constable, to the town until after the service of this writ. And it is claimed on the part of the defense, that no legal attachment of this property was made, and that the town cannot be held responsible therefor, nor for any act of his as constable, until after the bond was executed· This objection proceeds upon the ground, that until the execution of the bond, he is not clothed with any official authority, or power. And that the execution and delivery of the bond is a pre-requisite as necessary and essential to give validity to his acts, as his election by the freemen of the town.

The statute makes it the duty of the towns, annually to elect their constables; and when elected, within their territorial jurisdiction, there is given them the same powers that are vested in sheriffs in their respective counties. The 27th and 28th Sects. of the Comp. Stat., p. 116, contain the specific provisions upon which the questions in this case are presented, and provide that the several constables, before they enter upon the duties of their office, shall give bonds to the town, in such sums and with such sureties as *the selectmen may require.* And if he shall refuse to give such bond, his office shall be considered vacant. It will at once be perceived that ample power is given to the towns to protect themselves in their liability, by requiring at once the execution of the bond, and rendering him incapable of entering upon the duties of the office, in case of his refusal. In such an event they are authorized to consider the office as vacant, and proceed to another appointment—or, if the request for the execution of the bond is delayed, it may be made at any time during the year, with the same consequences.

But it is not in their power to vacate the office or treat it as vacated, or suspend the constable in the discharge of his official duties, until he is placed in fault, by a refusal to execute the bonds.

It is evident from the various provisions of the statute, that the bond when given, stands as a security, or indemnity for the town, and for their specific use and benefit only. And like other matters given as personal benefits and rights, may be insisted upon, or waived, at the option of those to whom the right or benefit is given. So long as the selectmen neglect to require the execution

XXIV.      24

of the bond, for that period, it must be considered as a waiver of their right, and dispenses with the necessity of its execution by the constable until requested, and the constable not having refused to give bonds, and his office not having been vacated by any act of the selectmen, he properly can exercise the duties of that office, until rendered vacant by a request and refusal to execute them.

The provisions of the statute are quite specific and definite.— The constable derives his official authority from his election, and the statute defining his powers. And he is not required to give bonds, until certain preliminary steps are first taken by the selectmen of the town; they are to specify the amount for which the bond is to be given, name the securities required, and request its due execution. Until these steps are taken, it is impossible for the constable to execute the bond, and as it cannot be given in consequence of the neglect or waiver of the matter by the selectmen, the officer can well execute the duties of the office, until those steps are taken and the request is made, and he stands in the same light, he would stand, if the bond was not required by the statute, for he is not, until those preliminary steps have been taken, under its operation. To give the act a different construction, would put it in the power of the selectmen to deprive him of the benefits of the office, and virtually vacate the appointment, though he has never refused to give the bonds, but on the contrary has ever been ready and willing to execute them.

We think, therefore, in this case, that the officer was authorized to make the attachment, and that the town is responsible for his neglect to deliver the property on the execution when demanded.

The evidence offered in mitigation of damages we think, also, was properly rejected. The Stat., p. 253 § 83, provides that personal property attached on *mesne* process, shall be held to respond the judgment, and for that purpose, the officer is entitled to the custody and possession of the same. And against that specific property, the creditor has a right to proceed until his judgment and execution is satisfied. The case of *Tyler* v. *Ulmer*, 12 Mass. R. 163, is decisive on this question.

In that case, the court say that "it would be extremely mischievous to permit an officer to excuse himself, or even to alleviate "the damages, consequent upon a wilful neglect of duty, by show- "ing that the creditor may still, by a new process, or new execu-

" tion, obtain satisfaction of his debt." The result is, that the judgment of the county court must be affirmed.