Hon. MILO L. BENNETT, ⎫
Hon. LUKE P. POLAND, ⎬ Assistant Judges.
Hon. ASA O. ALDIS, ⎭

---

THE BANK OF MIDDLEBURY *v.* THE RUTLAND AND WASH-
INGTON RAILROAD COMPANY, GEORGE W. STRONG AND
THOMAS H. CANFIELD. *

*Constables.   Validity of their official acts before they have given bail.
Estoppel.   Execution of specialties by corporations.   Corporate seal.*

The service of a writ by a constable, before he has given bail, is valid, if made
before any other request for bail has been made of him by the selectmen

---

* BENNETT, J., having presided at the trial below, did not sit in this case.

Bank of Middlebury *v.* Rutland and Washington R. R. Co. et als.

than the inquiry "when he was going to give bail," and before any refusal on his part to give bail or any interference on the part of the town with the discharge of his official duties.

To disqualify a constable on account of his not furnishing bail, there must be not only a *definite demand of bail* by the selectmen, but also a peremptory refusal to allow him to proceed with his official duties, either in the present tense, or after a certain limited period of indulgence. REDFIELD, Ch. J.

But even if an officer be not qualified to act, one, who for his own benefit, has procured him to perform an official act, cannot afterwards repudiate such act on account of the incompetency of the officer. REDFIELD, Ch. J.

Where, in order to effect a lease of the property of a corporation, which had been authorized by a vote of the board of directors, it was necessary that a replevin bond should be given by the corporation to replevy certain portions of such property then under attachment, and this bond was executed by and in the name of the corporation by its president, a majority of the directors being aware of the execution of the bond, and the corporation by this means obtained possession of the property, *it was held* that it was no defense to an action on the bond against the corporation, that no vote had been passed by the directors authorizing its execution or conferring upon the president authority to execute it.

Neither was it any defense to such a bond that the seal attached to it as the seal of the corporation, was not its usual and regularly adopted corporate seal.

A corporation may adopt any seal they choose for the time being, as well as an individual. REDFIELD, Ch. J.

It is not necessary that authority from a corporation to its agents to contract in its behalf, either under seal or otherwise, be conferred at an assembly of the directors, unless that is their usual practice. If the directors have adopted the practice of giving a separate assent to the execution of contracts in their name by their agents, it is of the same force as if done by vote at a regular meeting of the board. REDFIELD, Ch. J.

This was an action on a replevin bond. Plea the general issue, and several special pleas and issue thereon taken.

The plaintiffs gave in evidence certified copies from the town book of records of the town of Rutland, by which it appeared that at their March meeting, held on the first Tuesday of March, 1854, Isaac Gibson was elected second constable of the town of Rutland for the year ensuing.

Isaac Gibson having been called as a witness, testified that after his election he proceeded to act as constable of the town of Rutland, and to serve writs of attachment and collect executions ; and

that he served the writ of replevin which is made a part of this case, on the 16th day of May, 1854; and that soon after his election and before he received or served the replevin writ on the 16th of May, he was inquired of by the selectmen of the town when he was going to give bail, and that he had procured one Nichols to draw a bond for him before the service of the replevin writ, which had been signed by one surety for him and was in the hands of the witness when he served said writ, but that said bond was never completed or delivered to the selectmen of the town; and that no other or further request was made to him by the selectmen of the town upon the subject of his giving bail to the town, until after the service of said writ; and that he was in no way interfered with on the part of the town in his discharge of the duties of constable until after the service of said writ on the 16th of May, 1854.

The defendants claimed from this evidence that the said Gibson was not a constable of the town of Rutland at the time he professed to have served the said replevin writ on the 16th day of May, 1854, and that his pretended service was a nullity; but the court held that he was at the time constable of the town of Rutland, and that his service of the writ at that time was legally binding upon the parties to that suit, and that upon this part of the case there was nothing for the jury; the case, in this aspect of it, standing upon the aforesaid testimony which was not questioned or attempted to be impeached by the defendants.

The plaintiffs introduced testimony showing that said replevin bond, upon which this suit is predicated, was executed by George W. Strong and Thomas H. Canfield as two of the obligors; and that it was, upon its face, executed by the Rutland and Washington Railroad Company by George W. Strong, president of said company, and no question was raised as to the validity of the said replevin bond by any of the defendants, excepting a want of authority in the said George W. Strong, president of said company, to execute the bond in behalf of the corporation, and the want of the annexation of the usual and regularly adopted corporate seal of the company to the said bond. There were three distinct seals annexed to the bond, but neither of them was the usual corporate seal of the company. It appeared that said Strong had been elected president and a director in said company in February, 1854, and

12

had ever since been the president and one of the directors of said company, and was at the time of the execution of the bond also the general financial agent of the company for the country, taking in each capacity an active part in the affairs of the company. The plaintiff offered in evidence a vote of the directors of the corporation, passed the 11th of May, 1854, at Boston, Mass., the object of which was to authorize a lease of their railroad, etc., to Thomas H. Canfield, one of the defendants in this action, accompanied with evidence that on the 15th of May, 1854, a lease was executed to Canfield in pursuance of said vote, including the road and its furniture, among which the four engines replevied were included, and that this lease was acknowledged on the 16th day of May, 1854, and recorded the next day; and the said George W. Strong being called as a witness by the plaintiffs, gave evidence to the jury tending to prove that the lease to Canfield was agreed upon at a meeting of the major part of the directors of the company, at Boston; four out of the seven, that being their whole number, being present at the time of the passage of the vote, on the 11th day of May, 1854; and that upon his return to Rutland, he found all the personal property under attachment, including the engines in question, by the various creditors of the company, one of whom was a director in the company; and that a delay of some two or three days in the execution of the lease to Canfield consequently took place, and in the meantime a general negotiation was entered into by the persons in interest, both at Rutland and at Salem, N. Y., and that he could not say what number of the directors of the company were present at the negotiation at Rutland; could not say that a majority was present, but he testified that four of the directors were present at their meeting at Salem, and that it resulted in the execution of a chattel mortgage by the directors, for the benefit of the attaching creditors, and the mortgagees executed a lease of the personal property, including the four engines in question, and the directors executed the lease of the road to Canfield, and that the replevin suit was resorted to for the purpose that the four engines might be taken from the sheriff who had them in custody on a process against the company, and go into the possession of Canfield, to be used by him in running the road under his lease, and that they were so taken and delivered to Can-

field, and were subsequently used by him in running the road under his lease ; and that it was understood by all the directors present at Salem, that the replevin suit should be commenced to get possession of the four engines, and he supposed the fact that the property had been replevied was known to the board of directors of said company. Strong further testified on his cross-examination that there was no express vote of the corporation or of its directors authorizing him to execute the replevin bond now in question, and that he never did, in behalf of the company, execute any other replevin bond ; that the replevin bond was executed at Rutland the day it bears date, in the manner in which it purports to have been executed ; and that the corporation have a corporate seal, that he kept it at his house in Rutland, and that it was not present at the place where the bond was executed, and that the seal which he annexed to the bond for the company was not such corporate seal.

It appeared in evidence from the writ which was put into the case in favor of the present plaintiffs against the Rutland and Washington Railroad Company, that the four engines now in question were attached by Sheriff Edgerton on the 23d day of November, 1853, and no question was raised but what a judgment was duly ordered in said cause at the March Term of the Rutland county court, 1855, for the plaintiffs to recover of the defendants eleven thousand and four dollars and eighty-eight cents damages, and his costs, taxed at forty-nine dollars and forty-six cents, and that the execution was taken out, delivered to the same sheriff and the engines demanded of said G. W. Strong, all within thirty days from the rendition of the judgment ; and it was a conceded point that the engines were worth much more than sufficient to pay the judgment.

The plaintiffs offered testimony to show that George W. Strong said, upon inquiry being made of him at the time the replevin bond was delivered over, that he had authority to execute the replevin bond. This was objected to by the defendants, and the court ruled that it could only be admitted as evidence against Strong individually as tending, so far as he was concerned, to show the railroad company a coöbligor of a joint bond with said Strong and Canfield, and only for such purpose was the evidence admitted.

No question was made on the trial but what the replevin suit

had been commenced in the name of the company, and the replevin bond had been made available as matter of fact, by means of which the four engines were taken in behalf of the company from the custody of the officer who attached them, and were thereupon delivered to Canfield, the lessee of the road, and were subsequently used by him in running the road.

The court,—BENNETT, J., presiding,—charged the jury that George W. Strong, as president and director in said company, had no incidental powers which would enable him to execute the replevin bond so as to bind the company, but that it was not necessary that the power should be conferred upon him by an express vote of the directors, nor was it necessary that the books of the corporation should show that such a power had been conferred upon Strong ; and if they found from the whole evidence in the case, that the board of directors, at a meeting where a major part of them were present, unitedly assented to the execution of the replevin bond by Strong, as their president, in behalf of the company, this would confer upon him a power to execute the replevin bond for the company without any express vote of the directors or a major part of them, and that this might be proved by parol.   The jury were further told that if they did not find such previous assent of the directors to have been expressly given to Strong to execute the bond, still, if they found that the directors of the board had subsequently assented to the giving of the bond, had acquiesced in it, and had acted under it, taking the benefit of it to the corporation, it would be their duty to presume that an authority had been given to Strong, the president, to execute the bond, and that the company in such an event could not now repudiate the bond for want of authority in him to execute it, although no express vote of the directors had been shown giving their president the right to execute it.

In regard to the seal annexed to the bond, the jury were charged that if they found that the president of the company, under the instructions given him, had power to execute the bond in question, and had used the seal annexed to this bond as a seal for the corpo- ration, and as a substitute for the regular corporate seal, the company could not in this case repudiate the bond as a binding specialty contract for the want of the annexation of the regular corporate seal of the company.

Bank of Middlebury *v*. Rutland and Washington R. R. Co. et als.

To the foregoing decisions and charge of the court, the defendants excepted.

*F. E. Woodbridge* and *Linsley & Prout*, for the defendants.

1. The constable was not authorized to serve the writ of replevin referred to in the case. Comp. Stat. 116 sec. 27; *Bowman* v. *Barnard*, 24 Vt. 360.

2. The company could so contract as to give the remedy resorted to only by means of its corporate seal. *Mayo* v. *Charlton*, 6 M. & W. 814; *Cope* v. *T. H. D. Railway Co.*, 3 Wels. H. & Gord. 841; *Savings Bank* v. *Davis*, 8 Conn. 191; *Dennison* v. *Grandby*, 2 Pick. 345; *Randall* v. *Van Vechten*, 19 Johns. 60; *Bank* v. *Patterson*, 7 Cranch 299; Angell & Ames on Corp. 296; *Damon* v. *Grandby*, 2 Pick. 345.

The regular corporate seal of the company not having been used in this contract, the plaintiffs must show that the one used had been adopted as the seal of the company. To do this, some regular vote of the company must be shown. An officer or agent cannot change the seal at pleasure, especially where there is a regularly adopted seal of the company. It does not appear from the case that any director or stockholder of the company, except Strong, knew what kind of a seal was used.

3. The bond could not be executed by an agent so as to be binding upon the corporation, unless the agent had been authorized by a vote of the corporation or directors to execute such an instrument in behalf of the company. *Hunter* v. *Barker*, 7 Mees. & Wels. 342.

*E. N. Briggs* and *E. J. Phelps*, for the plaintiffs.

1. Gibson was legally authorized to act as constabl , and to take the bond in suit.

A constable derives his official powers from his election and the statute, and he is not required to give bonds until the selectmen of the town specify the amount, name the sureties, and request the due execution of the bonds; and he can execute the duties of the office until these steps are taken, and the request is refused. *Bowman* v. *Barnard*, 24 Vt. 355.

Having been duly elected, and having entered upon the discharge

of his duties without objection by the town, the mere inquiry by the selectmen " *when he was going to give bail*," was not sufficient to vacate the office, especially as the inquiry was met by no refusal on his part, and followed by no further action on the part of the town.

2. But if there could be a question on this point, the defendants would be estopped from denying Gibson's authority.

They caused the writ of replevin to be served by him as constable, executed the bond through him in that capacity, and availed themselves of the return of the property thereby obtained. The plaintiffs were, no party to the proceedings and could not prevent it. Certainly the defendants cannot now take advantage of their own wrong, and escape payment of the bond, upon the plea that their agent was not a constable, that the replevin was a trespass, and the whole transaction a fraud.

3. The execution of this bond was within the general powers of Mr. Strong, as president, director, and general financial agent of the company, having the management of their affairs. No special authority was necessary.

It is a general rule, that where an agent of a corporation has power to manage its affairs, authority to do all acts necessary to this purpose in the ordinary course of business is implied, and will· be presumed, to this extent, till the contrary appears. Angell & Ames on Corp. sec. 297 to 300; *Broower* v. *Harbeck*, 1 Duer 114; *Augusta Bank* v. *Hamblet*, 35 Maine 491; *Bank of Vergennes* v. *Warren*, 7 Hill 91; *Conover* v. *Mutual Ins. Co.*, 3 Denio 255; *Bates* v. *Keith Iron Co.*, 7 Metcalf 224; *Royal British Bank* v. *Turquand*, 23 Eng. Law and Eq. 273; *Beers* v. *Phœnix Glass Co.*, 14 Barb. 358.

4. The united assent of a majority of the directors at a regular meeting to the execution of the bond, was binding upon the company, though no formal vote or entry of record took place. The corporation is bound by the mere acts of the majority of the directors within the scope of their authority, unless the charter require their action to be in some specified form. *Cram* v. *Bangor House*, 3 Fairf. 354; Angell & Ames on Corp. secs. 291, 292; *Goodall* v. *New England F. I. Co.*, 5 Foster (N. H.) 169. And their sanction may even be implied from circumstances. Angell & Ames

on Corp. sec. 302 ; *Ridgway* v. *Farmers' Bank*, 12 Sergeant & Rawle 256.

5. Even if no previous assent is shown, if the directors subsequently acquiesced in the execution of the bond, and took the benefit of it to the company, this was such an adoption as bound the corporation and precluded them from denying the authority of the president.　Angell & Ames on Corp. sec. 304, and cases cited in notes ; *Moss* v. *Rossie Lead Mining Co.*, 5 Hill 137 ; *Whitwell* v. *Warner*, 20 Vt. 425.

6. If the president had power to execute the bonds, and used the seal annexed as the seal of the corporation, and as a substitute for the usual corporate seal, the bond is vaild.　The directors who adopted the regular seal, had power to dispense with it, and to adopt another for this occasion.　A corporation may use any seal. *Porter* v. *Androscoggin and Kennebec R. Co.*, 37 Maine 349 ; *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417 ; Angell & Ames sec. 217.

7. In any view, the corporation having received the benefit of this bond in the return of the property, and having ratified the remainder of the proceeding as a part of which the bond was given, are now estopped from denying either the authority to execute it or the seal affixed to it.　*Emmett* v. *Read*, 4 Selden 32.

The opinion of the court was delivered by

REDFIELD, Ch. J.　I. There is no good ground, we think, to question the authority of the constable in this case.　The case does not show that he had been requested to give bonds by the selectmen of the town in any particular sum, or with any intelligibly defined security, as was held requisite in *Bowman* v. *Barnard*, 24 Vt. 355, to constitute the first step in rendering the office vacant for a refusal to give bonds.　The most the testimony tended to show was, that he had " been inquired of by the selectmen when he was going to give bail," and that he was at the time of the service of the writ, acting upon the suggestion of that inquiry, having procured a bond to be drawn and signed by one surety.　This, we think, had no tendency to show a definite request to give security, and until that was done there could be no refusal.　But so far from a refusal in the present case, the constable seems to have

been making such progress in that direction as had thus far proved satisfactory to the town.

To constitute a case of disqualification of the officer to act in his office, there must be some definite action of the authority of the town, by which the officer shall know that he is not longer allowed to act under the election, and that others learning the facts may also know that he is not allowed to act as such officer. This will require not only a definite demand of bail of the officer, but a peremptory refusal to allow him to proceed, either in the present tense or after a certain limited period of indulgence, nothing of which appears in the present case.

And even after all this is done, it by no means follows that the official acts of one so situated are necessarily void as to third persons. Certainly we ought not to allow a party who has procured one so situated to act officially, afterwards to repudiate such acts upon the ground of the incompetency of the officer to do the act which he had himself procured for his own benefit, and which he claimed as binding so long as it operated in his favor. It would certainly be of the very essence of fraud to allow the railway company in this case to take the benefit of the official authority of this person for the purpose of obtaining possession of the property, and at the same time to repudiate it for all purposes of security or accountability. But we need not pursue this part of the case; it is apparent from what has been said, that the testimony had no tendency to show the office vacated. There was, therefore, no necessity of submitting it to the jury.

II. In regard to the proof of the execution of the bond by the corporation, the American cases differ *toto caelo* from the English cases. The courts in Westminster Hall still seem reluctant to abandon the idea of a corporation being unable to enter into ordinary contracts except by their common seal. They do indeed make some exceptions of classes of cases so indefinite as nearly to subvert the rule, but always under protest that the rule is to be most scrupulously and religiously maintained. For instance, the English courts except all that class of cases which are too insignificant to justify the use of the common seal of the corporation, such as the appointment of inferior officers and many similar acts. They also except all such acts as are of so frequent occurrence as

to make it absurd to expect any such formality, as in contracts by a railway to carry passengers and freight. If the corporate seal were required to be affixed to all such contracts by authority of the directors, it would be impossible, or if it were intrusted to the proper agent, it must involve the necessity of having the common seal in the hands and under the control of every subordinate agent of the company. This shows the impracticability of the rule in so strong a light as to satisfy the English courts of the necessity of some relaxation.

In this country some of the earlier cases manifest the same reluctance to admit the power of an agent to bind the corporation by specialty, unless he had authority from the company to affix their common seal. And if this were not expressly shown, the least which would show an implied authority to so bind the company, was supposed to be that the officer affixing the seal of the company should be shown to have had the custody of their common seal, which was presumptively made to appear by the fact that the seal was the common seal of the company. Hence the importance attached to the fact of it being the common seal of the company, in many of the cases.

But it was never supposed that if authority were shown from the corporation to attach their seal to the contract, that it was indispensable that use should be made of the ordinary common seal of the company. Any other seal would have the same effect if adopted by the company. And this is ordinarily established by showing authority to execute a contract on behalf of the company under seal, and the fact of attaching some seal to the name of the company with the intent to seal on their behalf.

So that, at present, nothing more is requisite than to show the authority of the agent to contract, on behalf of the company, in the particular form, i. e., with a seal. To this purpose it is required,

1. To show the authority of the agent to make the contract in some form. That does not seem to be questioned in the present case. The case shows the express assent of the majority of the board of directors. And the directors, in the absence of restrictions, in the charter or by-laws, have all the authority of the corporation itself in the conduct of its ordinary business. And it is not important that this authority be conferred at an assembly of the

directors, unless that is the usual mode of their doing such acts. If they adopt the practice of giving a separate assent to the execution of contracts by their agents, it is of the same force as if done at a regular meeting of the board. If this were not so it would lead to very great injustice, for it is notorious that the transaction of the ordinary business of railways, banks and similar corporations in this country, is without any formal meetings or votes of the board. Hence there follows a necessity of giving effect to the acts of such corporations according to the mode in which they choose to allow them to be transacted. If this were not done, it would become impossible to dispose of such contracts with any hope of reaching the truth and justice of the rights and duties of the several parties involved. And this is certainly nothing of which the corporation can complain. It is merely holding them to such rules of action as they see fit to adopt for their own guidance and the transaction of their business. The cases are numerous where the consent of a majority of the directors, given separately, has been held binding upon the company. And if it were not so held, it would enable the majority of the business corporations of the country to escape from many contracts which require the action of the directors for their execution, whenever they choose to do so. This is, so far as I know, a universal rule in regard to the action of corporations within the scope of their charter powers. And in numerous well considered cases in this country, where the authorized agents of the company have extended its business beyond the strict limits of those functions for which the charter was granted, the company has been held bound by the extension unless the corporators interfered to restrain such extension at the earliest moment. This rule was sanctioned by this court in *Noyes* v. *Rutland and Burlington Railway*, 27 Vt. 110. There is now, I apprehend, no ground to question that a corporation is bound by the action of a majority of the board of directors, expressed in the usual mode which they adopt in the transaction of the business of the board.

2. It must appear that the majority of the board of directors assented to the execution of a contract of the class in question, or that they subsequently adopted it. In the present case there seems no ground to question that the majority of the directors, if they

consented to the proceedings by replevin or took the benefit of it, must have expected it to be done, or to have been done upon the execution of such a contract as was executed, as the statute requires this particular form of contract.

As the jury have found under the charge, either the express consent of a majority of the directors to the adoption of the proceedings by replevin, or else the adoption of it by subsequent assent and ratification, there would seem to remain no question upon this part of the case, except as to the manner of the execution in not using the ordinary and common seal of the company.

The rule of law upon this subject originated at a time when the use of seals was more common with natural persons in the execution of contracts than at present, and when the seals of natural persons, as well as of corporations, contained devices significant of the person to whom they belonged, and when the seal itself, when affixed to an instrument, was equivalent to signing. In that state of affairs it was important that when corporations executed an instrument, it should be done by the common and ordinary seal of the company, and many of the English cases and some of the early or exceptional cases in the American books, seem to go upon the ground that a corporation cannot seal except by the use of their common seal.

But that is certainly not the established rule of the American courts. It is well settled that a corporation may adopt any seal they choose, for the time, the same as an individual. *Mill Dam Foundry* v. *Hovey*, 21 Pick. 417 ; *Porter* v. *Androscoggin and Kennebec Railway*, 37 Maine 349. These cases are fully in point and there are many other cases in the books. It would be strange if the majority of the board of directors who adopt, could not change the seal at will. Angell & Ames on Corp. sec. 217. This writer seems to regard this as the English rule, and there are some cases there which favor this view.

There is a numerous class of cases where the agent of a corporation has signed, as agent, and affixed an ordinary seal to his name, and the courts have regarded it as the seal of the agent and not of the corporation. In these very cases, had the agent affixed the common seal of the corporation, it would have shown an intention to use the seal of the company, and the courts would have

held the contracts specialties, no doubt, and as such, binding upon the company. But the fact of the seal being used as the seal of the company, may appear otherwise than from the device of the seal, as it does most unquestionably in the present case, in the form of attestation. The testimony in regard to Strong's declarations, at the time he delivered the bond, that it was properly executed by the corporation, seems to have added nothing to the fact of the delivery by him of the bond as the bond of the company, which seems not to be questioned in the case ; and there seems no good ground to question that it was admissible on general principles as evidence in the action.

But with the restriction upon which it was admitted there can be no question, as it seems to us. It was only admitted as evidence against Strong.

Judgment affirmed.