Hon. ASA O. ALDIS,
Hon. JOHN PIERPOINT, } Assistant Judges.
Hon. ASAHEL PECK,

---

THE TREASURER OF THE STATE OF VERMONT *v.* SAMUEL B. MANN AND OTHERS.

*Bond. Bank Director.*

M. having been elected director of a bank in 1849, gave at that time a bond with sureties, conditioned for the due performance of his duties as director "while he should be a director of said bank." He was annually re-elected

and acted as a director for several years afterward,.but never gave any other bond. *Held*, that the bond did not cover his official defaults occurring after the expiration of the term of office under his first election.

*Held*, also, that notwithstanding the statute forbade any bank director from entering upon the duties of his office until his bond had been executed and approved, and also provided that a director should hold his office until another was appointed and qualified, nevertheless the office was to be considered an annual one, and M. was to be regarded as acting as director each year under his last preceding election.

DEBT upon the official bond of the defendant Samuel B. Mann as one of the directors of the Orange County Bank. The facts in the case sufficiently appear in the opinion of the court.

The cause was tried by the court at the June term, 1859, BARRETT, J., presiding, and judgment was rendered for the plaintiff, to which the defendants excepted.

*P. Perrin* and *P. T. Washburn*, for the defendants.

*C. W. Clark* and *Lucius B. Peck*, for the plaintiff.

POLAND, Ch. J.   The principal defendant Mann, was chosen a director of Orange County Bank in January, 1849, and at that time executed a boad, in which the other defendants joined as his sureties, conditioned to secure the due performance by the said Mann, of his duties as director, "while he shall be a director of said bank" Mann was re-elected a director, in 1850, 1851, and 1852, and served as such during those years, but never executed any other bond. The alleged breach of duty by Mann as director, for which it is claimed the defendants are liable in this action on the bond, occurred after the expiration of the term of office under the election of 1849, and while Mann was acting as director under his subsequent elections. The important question in the case is, whether this bond bound the defendants for the fulfilment by Mann of his duty as director under future elections, or only for the year or term for which he had been elected. It seems now to be perfectly settled by authority, in reference to bonds or obligations given to secure the performance of official duties, that where the appointment is for a limited

State Treasurer *v.* Mann et al.

period, which is recited in the condition, or where it is not
recited in the condition, but is fixed and determined by law, the
obligation only extends for the period named in the condition, or
the term fixed by law, and will not be extended to cover any
extension of the time by a future appointment, or subsequent elec-
tion, although the language of the condition as to time be gen-
eral and unlimited. The presumption in such cases is held to
be, that the language is used in reference to the existing office
or appointment, which the principal holds, and that the sureties
do not intend to bind themselves for any indefinite and unlimited
extent of time, depending upon the contingency of future elec-
tions. In *Peppin et al* v. *Cooper*, 2 Barn and Ald. 431, BAYLEY,
J., said, speaking of a bond by a collector of rates, " I do not
mean to say that a bond for a longer period would be absolutely
void, but merely that there ought to be very strong words to show
that clearly to be the intention." But the words in that case
were held not to be strong enough, though they were pretty
strong words as will hereafter be seen, nor have I seen any case
where they have been found strong enough. It may be worth
taking time to refer to some of the principal cases on this subject.

The earliest and leading case is *Lord Arlington* v. *Merricke*,
2 Saund. 411. The plaintiff as postmaster general had appointed
one Jenkins a deputy postmaster for six months, and the defend-
ant executed a bond with Jenkins, conditioned that Jenkins
should faithfully perform the duties of his appointment " for and
during all the time that he the said Thomas Jenkins shall con-
tinue deputy postmaster," etc. Jenkins was continued in office
by further appointment for some three or four years, when he
became a defaulter. It was held that the defendant was only
holden for the six months for which Jenkins was first appointed,
that time being recited in the bond, and that the general words
of the condition should be limited to that.

*Liverpool Water Works Co.* v. *Atkinson*, 6 East 507, was the
case of a bond for the faithful performance of duty by a person
who had been appointed an agent to collect rents for the plain-
tiffs. The condition recited that he had been appointed for
twelve months, but it went on to add that the agent should " so
long as he should continue, and be employed by the company

from time to time," use due diligence, etc. The agent was continued in this service by the company beyond the year, and after the expiration of the year was guilty of a default. It was held that the bond only covered the year.

*Wardens of St. Saviour's &c.* v. *Bostock, et al.,* 5 B. & P. 175, was an action on a bond given to the plaintiffs for a collector of church rates. The condition was in general terms. that Armstrong, the collector, should collect all rates that should be thereafter put into his hands to be collected, and that he should from time to time surrender and deliver over on request to the wardens for the time being, or hereafter to be appointed, all monies collected, etc. Armstrong continued to be collector for several years by annual re-appointment, and eventually was delinquent. It was not recited in the bond that Armstrong had been appo'nted for one year, but as the office was by law annual, it was held that the obligation of the bond should be construed to have reference to that, and to extend and cover only the period for which he had been appointed when the bond was executed.

In *Peppin et al.* v. *Cooper,* before cited, the defendant executed a bond conditioned that a collector of parish rates should from time to time, and *all times thereafter,* collect and pay over, etc In this case also, the term of the collector's appointment was not named in the bond, but as the office was by law annual, it was held that the language of the condition must refer only to his existing appointment, and not to future appointments under which the collector was continued in office.

*Leadley et al.* v. *Evans,* 2 Bing 32, (9 E. C. L. 306.) This was an action on a bond conditioned that a collector of church and poor rates, should *from time to time, and at all times hereafter* collect and pay over, etc , to the church-wardens or *to their successors,* etc. The collector was continued in office several years by annual appointments, and was finally delinquent, but not so during the first year. It was again decided that as the office of collector was by law annual, the language of the condition must be limited and construed by that, notwithstanding the unlimited and continuous words used ; that the sureties must be understood as contracting in reference to his existing appointment, and not for any period contingent upon another election. In a very recent

English case, *Mayor &c. of Cambridge* v. *Dennis et al.*, reported in El. Bl. & El. 660, and also in the Jurist, vol. 5 N. S. 265, one Smith was appointed treasurer of the borough of Cambridge in 1839, and the defendants executed a bond conditioned that Smith should well and faithfully account to the plaintiffs for all and every sum and sums of money which might come to his hands, or be by him received as such treasurer as aforesaid, and should in all things well, truly, diligently and faithfully, *to the best of his abilities and according to the provisions of the statute hereinbefore mentioned, and of such statutes as may be hereafter passed relating to the said office, etc.* At the time of the execution of the bond, the office of treasurer was an annual appointment, and Smith was continued in office by annual appointments until 1843, when an act was passed by which the appointment of treasurer was to be during the pleasure of the council of the borough, and Smith was again appointed under this provision, and continued in office till his death in 1857, when he was found largely in arrear.

The question was in this case, whether the bond of the defendants was a continuing security for the whole time Smith continued in office, or only for the year for which he was first appointed, and it was again decided that as the office was annual when the bond was given, its language must be referred to the known period of the office under the existing appointment, and the reference to statutes which might be passed affecting the office, was only to such as might be passed within the year; though Lord CAMPBELL said, that, in his judgment, the language of the condition was so strong, that the sureties must in fact have looked beyond the current year, and acted on the supposition that the security ran on as long as the party was in office.

In addition to other cases cited by counsel where the same principle is recognized, I would refer to *Mayor of Berwick on Tweed* v. *Oswold*, 16 Eng. L. & E. 236 ; *Angero* v. *Keen*, 1 M. & W. 390 ; *Hassell* v. *Long et al.*, 2 M. & S., 363.

In the last named case, Lord ELLENBOROUGH said : " As the consequence of giving to the condition a more enlarged construction, so as to extend the responsibility beyond the current year, would be of so grievous and burdensome a nature, we think it requires more clear and certain words than are to be found in

this instrument. If the bond may continue beyond the current year, it may do so for the life of the collector, during the whole period of his remaining in office; it will attach on the surety whenever the person for whom he undertakes is in default, and we know of no means subsisting at common law by which the surety can redeem himself from this interminable risk."

The leading case in this country on the subject is *Bigelow* v. *Bridge*, 8 Mass. 275. Bridge was elected treasurer of Middlesex county in 1790, and at that time the bond in suit was executed, conditioned that Bridge should faithfully account for all sums of money which he should receive for the county. Bridge was continued in office by annual elections till 1806, and accounted for all monies received by him except for the last year. It was held that the bond only covered the first year. This decision has been repeatedly approved by the court of Massachusetts in subsequent cases, which have been cited, and by the courts in other states.

No case has been cited, and we doubt if one can be found, in conflict with those which have been referred to. It would seem to be clear then, that if the office of director, which Mann held, is to be regarded as an annual office, and that, when his default occurred, he was acting under elections subsequent to the execution of the bond, the defendants would not be holden.

But the plaintiff claims that the office was not strictly an annual one, and that although Mann was re-elected every year, still as he gave no new bond he is to be taken as having acted is director through the whole period of four years, under the election of 1849. By the act of incorporation of the Orange County Bank, passed in 1842, the directors are required to be elected on the second Tuesday in January, annually, with a further provision, that if it should happen that an election of directors should not be made on that day, the corporation should not be dissolved, but that directors might be chosen on some subsequent day, in such manner as as shall be prescribed by the by-laws of the corporation.

It is also provided that the directors shall hold their offices for a year, and until their successors are appointed and qualified.

Sec. 58 of the bank act provides, that no director shall enter

upon, or discharge any of the duties of his office, until his bond has been executed and approved as provided in the preceding section.

We think it perfectly apparent, that both Mann and the other directors of the bank supposed and understood that Mann acted as director for each year under the election for that year, and not that he was holding over under his election in 1849, because he had not become qualified by executing a new bond ; they doubtless supposed the old bond extended and covered his subsequent elections, so that no new bond was necessary to be given.

But the plaintiff claims that as Mann could not act as a director, under a new election without giving a new bond if that was necessary, that therefore he must be treated as holding over, under the former election, however it was in fact understood and treated by him and the other directors.

But we think it was not legally impossible that he should, in fact, have acted as a director, and performed the duties of the office under and by virtue of the new election, and indeed have been a *de facto* director, so that third persons could not have questioned the validity of his acts.  He was exercising the office or duty under a due election, *colore officii*, and although the bank might have refused to allow him to act as director, or the bank commissioner or the legislature might have interfered to prevent him, yet if he was allowed to exercise the duties of the office under his election without a bond, his acts, as to all persons dealing with the bank would be valid.   Our statute requires that every constable before he enters upon the duties of his office, shall give bonds, etc., and if he refuses on request to do so, his office shall be considered vacant, yet it was held in *Bowman* v. *Barnard*, 24 Vt. 355, and again in *Bank of Middlebury* v. *Rutland & Washington Railroad Co.*, 30 Vt. 159, that the official acts of a constable who had been duly elected, but had given no bond, were perfectly legal and valid as between third persons and that he was a legal officer *de facto.*

These cases seem to furnish a full answer to the argument that Mann must be treated as acting under the former appointment, because of a legal impossibility to act under the new one. But even admitting, that his acts as director under the new elec-

tion would be wholly invalid and void, and that his action was a mere usurpation of office, we do not see how this could operate to make his sureties liable.

Notwithstanding the provision that the directors should hold their office until others are elected and qualified in their stead, we are of opinion that the office must be regarded as annual. The directors are expressly required to be elected annually, and the day of election is fixed, but as there might possibly be a failure to elect on that day by the inability of the stockholders to agree, or for some other cause, provision is made for an election on a subsequent day in such cases. The statute contemplates no such thing as the directors continuing in office for several years under one election, and the sureties in a director's bond could not be supposed to understand or intend more than the legislature did, by this provision, viz : that it provided for the continuance of the office for such short interval as might be necessary to hold another election. This same provision exists in reference to all town and school district officers, who hold their offices by annual elections, but it was never supposed to divest them of the character of annual officers. The case of *Bigelow* v. *Bridge,* cited above, is a clear authority against the plaintiff on this point.

The Massachusets act, authorizing the appointment of county treasurers, provided that the person elected to the office should continue in office until some other person should be chosen and qualified in his room. See *Amherst-Bank* v. *Root et al.,* 2 Metc. 522.

In view, therefore, of all the anthorities on this subject, and of the general principle applied to all contracts of sureties, that they are not to be held beyond the precise terms of their contracts, we come to the conclusion that the defendants were not bound for the official conduct of Mann as director beyond the term for which he had been elected at the time the bond was given, and that when that terminated by the expiration of the year, and a new election, and no default had then occurred, their liability was at an end.

. It is asserted that for many years in this state, it was not the practice of bank directors to execute new bonds at each election, and that the general understanding was, that bonds like the

present were a continuing security for the whole period of their continuance in office under several elections; and we have no doubt that such was the case, though how general it was, we do not know.

But such usage and practice, however general, we cannot regard as sufficient to overthrow the long and well settled rule of law on the subject, whatever might be the consequence of now judicially asserting it in this state. But for a considerable time the practice has been changed in this state by the direction of the bank commissioner, and now by an express act of the legislature, so that we do not apprehend any serious mischief can result from adhering to the rule of the law. The view we have taken of the case renders it unimportant to decide the other questions made, whether Mann's default was of that character that would make his sureties liable if it had occurred while their bond was in force.

The judgment of the county court is reversed, and judgment rendered for the defendants.