TOWN OF WESTON v. C. W. SPRAGUE and M.. C EDMUNDS.

*Constable. Default. Sureties on Bond—Bond given Ten Days after Election good.*

I. One, legally elected a constable, and who serves as such, though he has neglected to furnish a bond within the time prescribed by the statute, the selectmen never having required it, is, a *de facto*, if not a *de jure* officer; and the sureties on his bond given several months after his election are liable for his delinquencies in appropriating the public funds to his own use.

2. If the bond were not valid by force of the statute, it would be at common law.

3. When one is elected constable it is the duty of the selectmen *first* to move in the matter and *require a bond*, to fix its amount, and the kind of security. Their neglect to *require* a bond, not the constable's neglect to *give* one, causes a vacancy in the office. if there be one.

4. R. L., s. 2674,—Act of 1870, No. 35—bonds required of constable,—construed.

DEBT on an official bond of a constable of the town of Weston. Demurrer to the declaration. Heard at the May Term, 1881, TAFT, J., presiding. The court overruled the demurrer. It appeared that the constable, one Smith, was elected at the annual March meeting, 1877, but the bond, with defendants as sureties, was not given till the 19th day of the following June ; and that said Smith collected the taxes after the last date, and appropriated some part of them to his own use. It did not appear that the selectmen ever required a bond of him before this time in June. The following is the condition of the bond :

" That if the said Amos A. Smith shall well and truly execute the office of first constable of said town of Weston for the year ensuing, and

shall at all times faithfully account for all the money and other things which shall come into his hands and possession by virtue of his said office, and shall well and faithfully perform all and singular the duties thereof, as required by law so as to save and keep harmless and indemnified the said town of Weston from all actions, suits, extents, damages, losses, costs and trouble by reason of anything done or omitted to be done in his said office, then this obligation to be void; otherwise of force."

*T. R. Seaver* and *W. C. French*, for the defendants.

By the act of 1870 we insist that a vacancy in the office of constable occurs absolutely when the constable neglects for ten days after his election to give a bond ; and that this in no wise depends on the prior request of the selectmen to furnish it.   Compare the phraseology of the sections 26 and 27, c. 15, Gen. Sts., with the Act of 1870, No. 35.   In the one case it says, " If he shall *refuse*," &c. ; a previous request being implied ; in the other case it says, " If he shall *neglect*," &c.   It is obvious that the legislature intended in the last case to enact what is plainly imported by the words of the Act, and to have the retention of the constable's office depend upon whether he should give the bond, and not on whether the selectmen should do their duty.   1 Dillon Corp. 191, 240.

The defendants are not estopped by the recitals in the bond from denying that Smith was constable, for it is not recited in the bond that he was constable.   *Kepp* v. *Higgett*, 10 C. B. 34.

If Smith was not constable, then the defendants are not liable on the bond.   The undertaking of a surety is always looked upon as one of *strictissimi juris*, and cannot be extended beyond the exact terms of his undertaking.   He is not liable for money in the principal's hands which he had no right to receive.   *Leigh* v. *Taylor*, 7 B. & C. 491 ; Cooley on Taxation, 502.

*Walker & Goddard* (and *J. Barrett* of counsel) for the plaintiff.
It is the duty of the selectmen to first act in the matter, to fix the amount of the bond ; and until they have performed on their part, the constable cannot be in default.   30 Vt. 159 ; 29 Ib. 212 ; 24 Ib. 355.

A bond executed by an officer *de facto*, conditioned for the faithful discharge of his duties, &c., will be upheld as a valid security, and the sureties cannot aver that he was not an officer. *State* v. *Cooper*, 53 Miss. 616 ; *State* v. *Rhoades*, 6 Nev. 352 ; *Lyndon* v. *Miller*, 36 Vt. 329 ; *State* v. *Bates et al.*, 36 Vt. 387 ; *Green* v. *Wardwell et al.*, 17 Ill. 278 ; Cooley on Taxation, 184.

Smith at least was an officer *de facto*. *State* v. *Carroll*, 38 Conn. 449 ; *Petersilea* v. *Stone*, 119 Mass. 465 ; 55 Penn. St. 468 ; 56 Penn. St. 436.

The bond was good at common law. *Goodrun* v. *Carroll*, 2 Humph. (Tenn.) 500 ; *Branch* v. *Elliott*, 3 Dev. L. (N. C.) 86 ; *State* v. *Bartlett*, 30 Miss. 624 ; *State* v. *Thompson*, 49 Mo. 188 ; 1 Ala. 316 ; 1 Met. (Ky.) 410 ; 7 Reporter, 355 ; 31 Mo. 384.

The opinion of the court was delivered by

POWERS J. The declaration alleges that the bond in question was executed by Smith and his sureties as Smith's official bond as constable.

The statute, No. 35 Acts of 1870, under which it is claimed that the bond is invalid, reads as follows, viz.:

Sec. 1. Section twenty-six of chapter fifteen of the General Statutes is so amended as to read as follows :

" It is hereby made the duty of the selectmen of the several towns in this State to require of the constables in their respective towns, before they enter upon the duties of their office, to give bonds to their towns for the faithful performance of their duties, in a sufficient sum with good and sufficient sureties ; and if any person chosen to the office of constable in any town in this State shall neglect for ten days next succeeding his election to give such bond his office shall be vacant ; and the towns may require similar bonds of their treasurers and clerks."

Sec. 26 of chap. 15, which is thus amended, reads as follows :

" The several constables of towns, before they enter upon the duties of their respective offices, shall give bonds to their towns for the faithful performance of such duties, in such sums and with such sureties as the selectmen may require ; and the towns may also require similar bonds of their treasurers and clerks."

Sec. 27 of the same chapter provides that if any of the officers

named in sec. 26 shall refuse to give bonds as therein provided, his office shall be vacant.

It is argued that the failure of Smith to execute his official bond within the ten days limited in the Acts of 1870, *ipso facto* worked a vacancy in his office ; and that whatever he did thereafterwards under pretence of being constable was void ; and the sureties on his bond afterwards given are not answerable for his acts.

The old act (sec. 26) declares that constables *shall* give bonds before entering upon the duties of their office. This requirement, so far as the constable's duty is involved, is altogether more imperative than the same requirement is expressed in the corresponding text of the Act of 1870.

In sec. 26 the *time* within which the constable shall give bonds is declared to be " before he enters upon the duties of his office." But this peremptory requirement to give bonds is coupled with the qualifying language that the bonds are to be given " in such sums and with such sureties as the selectmen *may require.*"

Giving effect, then, to the whole section, as we are bound to do, it is evident that the selectmen are to act before the constable is called upon to move. The selectmen must *require* the bond ; they must fix the penal sum and the qualifications of the sureties, otherwise it is impossible for the constable to discharge the duty enjoined upon him.

And so it was held in *Bowman* v. *Barnard*, 24 Vt. 362, that the constable is not " required to give bonds until certain preliminary steps are first taken by the selectmen of the town ; they are to specify the amount for which the bond is to be given, name the securities required and request its due execution." This case was approved in *Bank v. R. R. Co.*, 30 Vt. 167.

The subject-matter of the old and new acts is the same. The Legislature sought in the Act of 1870 to remedy some mischief existing under the old act.

Looking at the letter of the text in the old act, the selectmen are required to move only by *implication*, whereas under the new act their duty to move is enforced by *peremptory* language. Under the old act constables were required to move by peremptory language, while under the new act this duty is less peremptorily en-

joined.   Tried by this test it is manifest that the Legislature aimed to infuse increased vigor and diligence into the action of the selectmen rather than that demanded of the constable.   The point to be gained was to *secure* the execution of the bond, and to fix a limit to the time within which this should be done.

Plainly it was not the purpose of the Act of 1870 that the constable should move in advance of action by the selectmen, or in defiance or disregard of their action.   The purpose to be served was to secure indemnity to the town.   In the transaction the interests of the town and the interests of the constable are adverse. It is not to be said that the Legislature intended to make the constable a judge in his own case, to determine how much and what kind of security he should give for the faithful discharge of his duties, and the faithful accounting for the public funds.   It is more probable that, as the purpose of the bond is to make security, the party to be secured is to be the judge of its quality and amount. Thus the spirit and letter of the text are in accord.

Now, then, to make the Act of 1870 operative to effectuate its purpose, it is obvious that the selectmen must first fix the amount of the bond and determine the kind of security.   Until this is done it is *impossible* for the constable to execute the bond.

This result is apparent from another view of the act.   The statute says the selectmen *shall require* a bond in a sufficient sum and with sufficient sureties ;  *and* if the constable shall *neglect* to give *such* bond, his office shall be vacant.   It does not declare that unless the constable give *a* bond his office shall be vacant ; but requires him to give *such* bond.   The word " such " has no meaning in its context, unless it be referred, as it plainly must, to the bond which the selectmen are to " require of the constables in their respective towns."   And if referred to that bond it is evident that the constable is powerless to comply with his duty until *such* bond is required of him.   Therefore he can be guilty of no *neglect*, for ten days nor any other time, until he is in a position where he *can* act.   It follows that the vacancy is created, if created at all, by the failure of the selectmen to comply with the precedent duty enjoined upon them by the act.

The limitation of ten days fixed by the act does not impeach

this construction of its provisions. Under the old act, constables were peremptorily required to execute their bonds " before they enter upon the duties of their office." Their term of office dates from their election, and they might be called to official duty at, once. Under the new act the selectmen are enjoined to require the bond before the constable enters upon the duties of his office ; and to exact of the selectmen increased vigilance in the performance of this duty, the limitation of ten days is assigned as a time within which they *must* act; and further they must therein give the constable a reasonable time to comply with his duty.

This construction of the Act of 1870 leaves the *effect* of inaction by the selectmen under it precisely as it stood under the old law. The *effect* under the old law is stated in *Bowman* v.*Barnard, supra.*

" Until these steps are taken it is impossible for the constable to execute the bond ; and as it cannot be given in consequence of the neglect or waiver of the matter by the selectmen, the officer *can well execute the duties of the office until these steps are taken, and the request is made,* and he *stands in the same light* he would stand if the bond was *not required by the statute,* for he is not, until these preliminary steps have been taken, *under its operation.* To give the act a different construction would put it in the power of the selectmen to deprive him of the benefits of the office, and virtually vacate the appointment."

It follows then that, inasmuch as the selectmen of their own wrong cannot create a vacancy in the office, Smith was to all intents and purposes a legal constable unless he has himself made a vacancy. The office was duly and legally conferred upon him by his election. In the order of events he has wrongfully omitted no ceremony required by law of him to entitle him to the emoluments of his office. His right to exercise it has never been called in question by the town nor other public authority. By the consent and approval of the town, as well as his sureties, he assumed the office and entered upon the discharge of its duties. Clearly, Smith could not say he was not a legal constable. Nor could he take advantage of his own wrong and say, " my bond is invalid, because I omitted to file it seasonably." Smith's sureties stand no better in this respect than he does.

Speaking for myself I see no substantial reason why Smith was not an officer *de jure* sufficiently equipped to encounter any proceeding instituted to test his title, and that it must be held that the neglect of the selectmen to require of him his bond within ten days was a waiver for the time being by them, in behalf of the town, of the indemnity provided by the act. *Bowman* v. *Barnard*, *supra*.

But passing this claim, we are all agreed that Smith was a *de facto* constable, and that, although he might not be able to defend his title to the office, if it were directly assailed, his acts as such are binding upon third persons; and his sureties are estopped to deny their responsibility under his bond.

He did not usurp the office. He was duly elected under the forms of law. He assumed to act under his election. He was in *colore officii*. The town of the one part, and Smith and his sureties of the other part, treated him as a legal constable; and the bond was executed and accepted as and for his official bond. Smith voluntarily, by permission of the town and his sureties, under color of his office, collected the money now sued for. The taxpayers, unquestionably, were discharged by payment of their taxes to him. The sureties agreed to be responsible to the town for such collections. It is clearly now too late for them to say that he was not a *de facto* officer, or to deny their liability under their bond.

In *State* v. *Bates*, 36 Vt. 397, where the State treasurer had failed to take the oath of office required by the constitution, it was held that the sureties on his bond could not take advantage of this omission of duty. The same position was taken by the court in *Lyndon* v. *Miller*, 36 Vt. 329. In *Green* v. *Wardell*, 17 Ill. 278, where sureties signed the bond of one who acted as a justice of the peace, and as such collected money, it was held that they were liable on their bond, even though he was not legally elected, nor commissioned, nor sworn. The court, per CATON, J., say: "By signing his bond they (the sureties) acknowledged his rights to the office and to discharge its duties, and as such recommended him to the public. *They*, at least, shall not be heard to say that although they signed his bond and thereby induced others to put money in his hands, relying on the bond for its

safety, still he was not elected, was not commissioned, was not sworn—that he was not in fact a justice."

In *Corbitt v. Carroll*, 50 Ala. 315, the same doctrine was laid down in a case where the appointment of a guardian, who acted as such, was void. In *Jones* v. *Scanland*, 6 Humph. 195, where a person, ineligible to the office of sheriff, was elected, sworn, gave bond and collected taxes, which he misappropriated, it was held that his sureties were liable for the money so collected.

In *Mayor of Homer* v. *Merritt*, 27 La. An. 568, it was held no defence to the sureties of a town collector that the taxes collected were not duly assessed, or that the collector was not *legally entitled to the office*.

In *State* v. *Rhoades*, 6 Nev. 352, when the State treasurer was re-elected, re-commissioned, re-sworn and acted under the new election, but failed to file a new bond in time, which by law worked a forfeiture of his office, it was held that he did not hold over as of the former term of office, but was under his new election an officer *de facto*, and that having subsequently given a new bond reciting his new election, his sureties thereon were estopped to deny his holding. *de jure* as of the new term. The general doctrine is laid down in the following cases: *United States* v. *Maurice*, 2 Brock. 96; *United States* v. *Tingey*, 5 Pet. 114; *United States* v. *Bradley*, 10 Pet. 343; *Kelly* v. *The State*, 25 Ohio St. 567; *Inhabitants, &c.*, v. *Fleming*, 8 Gray, 613; *Commissioners Ramsey Co.* v. *Brisbin*, 17 Minn. 451.

But if Smith was neither constable, *de jure*, nor, *de facto*, the bond is a valid common-law obligation against him and his sureties.

It is an elementary principle that a voluntary bond made upon good consideration, and not in contravention of the policy of the law or the prohibitions of a statute, is a valid instrument binding the makers to the performance of its conditions. The bond in suit is precisely within this rule. *Bank* v. *Smith*, 5 Allen 413; *Pritchell* v. *People*, 1 Gilman (Ill.) 525; *Cobb* v. *Curtis*, 4 Littell, 235; *State* v. *Fredericks*, 8 Iowa, 553; 7 Reporter, 335.

The judgment is affirmed, and the case remanded to be proceeded with in due course.