Davis, J.,
delivered the oinnion of the court:
While Sempronius IL Boyd held the dual office of minister and consul-general in Siam lie fell seriously ill, and, obtaining the proper leave of absence, ho returned to the United States, where he remained until his death, which occurred June 22, 1894. His statutory leave of absence with pay ceased October 26,1892, after which date he had no claim to salary.
Before leaving Bangkok, he asked Eaton (a plaintiff herein), then a missionary in Siam, to take charge of the consulate and its archives. Boyd wrote the minister of foreign affairs of Siam informing him of his contemplated departure, and that he designated Eaton “vice-consul general.” Two days later (June 23, 1892) Eaton took an oath which contained the statement that he had been “ appointed, empowered, authorized, and nominated to” the President “acting consul-general for the Kingdom of Siam; ” that he accepted the office and swore to faithfully discharge the duties of the office, conform to regulations, preserve the Government property, and “turn over and deliver, at the termination of my official position, everything belonging to the Government under my control.”
The same day Boyd stated, under his hand and seal, writing as “minister resident and consul-general,” that he had that day appointed Eaton acting consul-general. Previous to this (November 10, 1891), Robert M. Boyd, a son of Sempronius Boyd, had been appointed vice-consul-general; he had not, however, qualified as such officer, and left for the United States March 30,1892, whence he did not return. His appointment under these circumstances has no bearing upon this case.
The statute makes a salary allowance to ministers and *170 consuls absent with leave for a period not exceeding sixty-days after their arrival at their homes.
We have now to decide as to Eaton’s status during’ Boyd’s absence. Boyd, the minister, acted under the spur of necessity, as he was forced to suddenly leave his post, and having no secretary of legation to assume the duties of the office he turned to Eaton for aid as a fellow-citizen in a city where few Americans could be found. In tho appointment of Eaton, Boyd exercised all the power he possessed, and intended to use all this power; the action was reported to the Department of State, and, as the Assistant Secretary said, “the temporary appointment of Mr. Eaton was therefore required by the emergency;” the Assistant Secretary further says as to Eaton’s official dispatches, “they were duly acknowledged by the. Department as communications from a person authorized to perform tho duties of minister resident and consul-general in the emergency then existing.” Eaton took charge of the office and performed the duties of minister resident and consul general during Boyd’s illness until the latter’s departure from Bangkok, and for this period Eaton makes no claim for compensation. July 13,1892, Eaton informed the Department of Boyd’s departure and that he had assumed charge of the legation and consulate-gen eral; he remained in charge to (and including) May 17, 1893, during this time performing the duties of the combined offices. A form of bond was sent Eaton by the Department of State describing him as “ acting consul-general,” and this was afterwards amended by the Department when he was described as “vice-consul-general.” Both bonds were approved by the Department of State as required by law. (R. S., sec. 1698.)
It has long been settled that a vice-consul, acting during the absence of his superior or during a vacancy in the office, shall be compensated from the salary of that officer. This was settled before the act of August 18,1856, the act reorganizing the consular service. In the case of Ooxie, who, without regular appointment, remained in charge of the consulate in the Barbary States after the death of his father (the consul), the Attorney-General advised the President that the salary be X>aid him, saying:
“The public service requires that the duties of the office should be discharged by some one, and where, upon the death *171 of tbe consul, a person wlio is iu possession of tbe papers of tbe consulate,' enters on tbe discharge of its duties and fulfills them to tbe satisfaction of tbe Government, I do not perceive wby be should not be recognized as consul for tbe time be has acted as such, and performed tbe services to tbe public, and if be is so recognized, tbe law of Congress entitles him to bis salary.” (Op. Atty. Geni., vol. 2, p. 521.)
June 3, 1856, Mr. Marcy, Secretary of State, asked of tbe Attorney-Gen eral tbe following questions:
“1. When a consul is absent from bis post is tbe person whom tbe consul, with tbe sanction of tbe Department, has. left in charge of tbe consulate and performing the duties, entitled to tbe statute salary?
“2. If a consulate becomes vacant by death, resignation, or removal of tbe incumbent, is tbe individual who shall have been placed by a minister or other authorized agent of tbe Government in charge of tbe office entitled to the salary?”
Mr. Cushing, in answer to Mr. Marcy’s inquiries, held “that tbe substitute consul, or locum tenens, is to be paid out of tbe salary or to go uncompensated,” and said:
“ 1. A substitute or vice-consul left in charge of tbe consulate during tbe temporary absence of tbe consul is to be compensated out of tbe statute emoluments óf tbe office, subject to tbe regulations of tbe Department.
“ 2. An acting consul, in charge of a consulate during actual vacancy of tbe consulate, is entitled to receive tbe statute compensation of tbe office.” (7 Op. Atty. Genl., 714; see also Wharton’s Digest, vol. 1, sec. 118, p. 772.)
Section 1695 (R. S.) authorizes tbe President—
“To define the extent of country to be embraced within any consulate or commercial agency, and to provide for tbe appointment of vice-consuls, vice commercial agents, deputy consuls, and consular agents therein, in such manner and under such regulations as be shall deem proper, but no compensation shall be allowed for the services of any such vice-consul or vice com* mercial agent beyond nor except out of tbe allowance made by law for tbe principal consular officer in whose place such appointment shall be made.”
Section 1703 (R. S.) provides that—
“Every vice-consul and vice commercial agent shall be entitled, as compensation for bis services as such, to the whole or so much of tbe compensation of the principal consular officer in whose place be shall be appointed as shall be determined by tbe President, and tbe residue, if any, shall be paid to such principal consular officer.”
*172 Nice consular officers are those who replace the chief of post during his abseuce, and are not to be confounded with deputy consular officers who act during’ the presence of the superior. (Cons. Reg’, of 1888, paragraphs 19 and 31, pp. 7 and 13.) Compensation of such officers is thus fixed by the regulations (sec. 471, Reg. of 1888):
“1. In case the principal officer is absent on leave for sixty days or less in any one calendar year and does not visit the United States, the vice consular officer acting in his place is entitled to one-half of the compensation of the office from the date of assuming its duties, unless there is an agreement for a different rate, the principal officer receiving the remainder. But after the expiration of the sixty days, or after the expiration of the principal’s leave of absence (if less than sixty days), the vice consular officer is entitled to the full compensation of the office.
IC2. If the principal visits the United States on such leave and returns to his post, the foregoing rule will include the time of transit, both from and to his post, as explained in paragraph 4G0. But if the principal does not return to his post, either because of resignation or otherwise, the rule will embrace only the time of absence not exceeding sixty days, together with the time of transit from his post to his residence in the United States.”
While section 1742 of the Revised Statutes provides that—
“ No diplomatic or consular officer shall receive salary for the time during which he maybe absent from his post, by leave or otherwise, beyond the term of sixty days in any one year; but the time equal to that usually occupied in going to and from the United States, in the case of the return on leave of such diplomatic or consular officer to the United States, may be allowed in addition to snch sixty days.”
The compensation of a vice consular officer acting during his principal’s absence (when alone he can act) is paid out of the compensation of his principal, and continues during the principal’s absence, even if that absence exceeds the statutory sixty days. (12 Opin. Att. Gen., 410.)
In settling the accounts of Boyd and Eaton, the Treasury allowed Boyd full salary to (including) July 11, 1892, and onelialf salary after his departure from Siam (July 12, 1892), to (including) October 26,1892, when his sixty days’ leave with pay (excluding transit time) expired.
The statute stopped Boyd’s salary October 26, 1892, which was sixty days after his arrival in the United States, and his *173 claim for salary after tliat date and to February 11, 1893, was not approved by the Department of State nor paid, nor should it be.
Eaton’s accounts as vice-consul-general were approved by the Department of State, being presented upon the'theory that he was entitled to full salary (at the rate of $5,000 per annum) from October 27,1892, to (including) May 17,1893. The Treasury did not allow the claim made by Eaton for one-half salary from July 12,1892, to October 26, 1892, to wit, from the date of Boyd’s departure from Siam to the date when his leave with pay expired. The reason for this was that the Comptroller understood there was an agreement between Boyd and Eaton by which Eaton was to receive only the salaries of interpreter and prison keeper to the legation.
Eaton gave a bond as soon as he could; the form of this bond was prescribed by the Department of State, which later became dissatisfied with its form and sent him another bond in blank, which he diligently perfected and returned to the Department. It is suggested that he is not entitled to the salary of the office for the period between his appointment by Boyd and the date of the approval of the bond, although he had entered upon the duties of the office and performed them during the period in question.
The general rule is that a vice-consul is entitled to compensation when his chief is absent, and then from the date of assuming the duties of the office. (Cons. Reg. 1888, sec. 471, clause 1, p. 167.) If Eaton had been appointed in due course by the Secretary of State prior to entering upon the duties of the office there could be no question now as to his rights to the pay. But as he was designated by Boyd prior (necessarily) to confirmation by the Department, and had to await approval from that Department — instructions and a form of bond — a period necessarily elapsed between his designation to the office and the approval of his bond by the Department. In the nature of things this was unavoidable. It is prescribed - by the regulations and has long been the custom for the pay of a vice consular officer to begin upon the date when he assumes the duties of his office; that is, upon the departure of his superior officer, and this custom is of great if not controlling weight. (United States v. Moore, 95 U. S., 763; United States v. State Bank, 6 Peters, 29; United States v. McDaniel, 7 id,, 1.)
*174 It is true that the vice-consul must “ before ho enters on the execution of his trust give bond with such sureties as shall be approved by the Secretary of State.” (Sec. 39, p. 16, Cons. Reg., 1888.) And this bond must be received, approved, and filed before his accounts can be adjusted at the Treasury. This, however, does not necessarily affect the right to compensation during the period between appointment and receipt of bond.
We therefore conclude that Eaton is entitled to one-half the salary of the post from July 12, 1892, to October 26,1892, and to full salary from that date to May 17, 1893. (Rex v. Lonsdale, 1 Burrow, 447; United States v. Bradley, 10 Peters, 343; United States v. Linn, 15 Peters, 313; City of Chicago v. Gage, 95 Ill., 593; State v. Toomer, 7 Rich. S. C. Law, 216; State v. Churchill, 41 Mo., 41; Sprowl v. Lawrence, 33 Ala., 674; People v. Holley, 7 Wendell (N. Y.), 481; State v. County Court, 44 Mo., 230; State v. Porter, 7 ind., 294; State v. Falconer, 44 Ala., 696; State v. Colrig, 15 Oreg., 57; State v. Peck, 30 La. An., 280; Kearney v. Andrews, 10 N. J. Chan., 70; State of Maryland v. Commissioners, 29 Md., 516; Speake v. United States, 9 Cranch, 28; Ross v. Williamson, 44 Ga., 501; State v. Hadley, 27 Ind., 496.).
In United States v. Flanders (112 U. S., 88) the Supreme Court held:
“If he is appointed, and acts and collects the moneys and pays them over and accounts for them, and the Government accepts his services and receives the moneys, his title to the compensation necessarily accrues unless there is a restriction growing out of the fact that another statute says that he must take the oath before being entitled to any of the salary or other emoluments’ of the office. But we are of opinion that the statute is satisfied by holding that his title to receive, or retain, or hold, or appropriate, the commissions as compensation, does not arise-until he takes and subscribes the oath or affirmation, but that when he does so his compensation is to be computed on moneys collected by him from the time when, 'under his appointment, he began to perform services as collector, which the Government accepted, provided he has paid over and accounted for such moneys (p. 91).”
On this branch of the case, Eaton will recover one-half salary from July 12,1892, to October 26,1892, amounting to $726.90; full salary from October 27, 1892, to May 17,1893 ($2,792.35), less the fees charged to him, to wit, $245.41; that is, to a balance of $3,273.84.
*175 As to the smaller items of his account, these are for fees received for unofficial and notarial services, and should be allowed. (United States v. Mosby, 133 U. S., 287; Stahel v. United States, 26 C. Cls. R., 193.)
The sum of $63, fee and fines, collected in the consular court are for services not required by statute nor specified as official in the consular regulations, and should be allowed. (Sec. 4120, R. S., sec. 1396, p. 472; U. S. Cons. Reg. of 1888.)
These fees were expended for consular court expenses, for which Eaton has not been repaid. The petty item for lights upon the King’s birthday was approved by the Department of State and appears to be a charge within the discretion of that Department; it is therefore allowed.
Judgment in favor of plaintiff Eaton for $3,456.98.
Petition of Sempronius H. Boyd’s administratrix dismissed.