Peelle, J.,
dissenting:
Tbe claimant in this action seeks to recover the salary of special inspector of foreign steam vessels provided for by the act August 7, 1882 (22 Stat. L., 346), under the following-appointment:
‘‘Teeasuey Department, Oepice oe the Secretary,
“ Washington, D. G., May 15, 1891.
“Mr. John Glavey,

iiJYew Orleans, Louisicma.

“ Sir: Under the provisions of an act of Congress approved August 7th, 1882, entitled ‘An act to amend section 4400 of title 52 of the Revised Statutes of the United States, concerning the regulation of steam vessels,’ you are hereby appointed to serve, in connection with your appointment as local inspector of bulls of steam vessels, as a special inspector of foreign steam vessels, without additional compensation, for the port of New Orleans, Louisiana, the appointment to take effect from date of oath.
“Respectfully, yours,
“Charles Foster, Secretary.”
On the part of the defendants it is contended (1) that the claimant was not appointed to the office; (2) that if appointed, he never qualified by giving bond, and was not, therefore, an officer de jure, and (3) that if appointed he is estopped from receiving the salary by reason of his silent acquiescence in the action of the Secretary, and by making no demand therefor during his period of service.
It is manifest from the language of the letter that what the Secretary intended was that, inasmuch as the claimant was then holding the office of local inspector of hulls of steam vessels, for which he was being paid the salary of $2,250 per annum, he could, in connection with the duties of that office, also perform, without additional compensation, the duties of special inspector of foreign steam vessels.
The language in the letter of the Secretary, “the appointment- to take effect from date of oath,” may fairly be considered as a direction to the claimant to take the oath prescribed by law before entering upon the discharge of the duties of the office to which he had been appointed; though if he had omitted that language, such oath, under Revised Statutes, *258 section 1756, would have been an essential prerequisite to Ms performance of the duties of the office.
The Secretar}'' of the Treasury had no authority to require of the claimant the performance of the duties pertaining to the office of inspector of foreign steam vessels, except pursuant to the statute requiring the same, section 2 of which reads:
“ That for the purpose of carrying into effect the provisions of this act the Secretary of the Treasury shall appoint officers to be designated as special inspectors of foreign steam vessels, at a salary of two thousand dollars per annum each, and there shall be appointed of such officers, at the port of New York, six; at the port of Boston, two; at the port of Baltimore, two; at the port of Philadelphia, two; at the port of New Orleans, two, and at the port of San Francisco, two.”
It will thus be seen “that for the purpose of carrying into effect the provisions of the act the Secretary of the Treasury shall appoint officers to be designated as special inspectors of foreign steam vessels” * * * “at a salary of $2,000 per annum,” two of which were to be appointed at the port of New Orleans. They were not to be appointed at the discretion of the Secretary, nor was he to be the judge, even, as to the number to be appointed. The services were to be performed as provided in section 3, “under such regulations as shall be prescribed by the Secretary of the Treasury,” but manifestly that did not clothe him with authority to annul the statute or to provide that the services therein provided for might be performed by some one by assignment or designation, or by some qualified appointment without compensation.
And although the Supervising Inspector-General, in his report to the Secretary of the Treasury, recommended the repeal of the law as set forth in finding 2, and the Secretary so recommended to the Congress, still the law was not repealed until March 1, 1895. (28 Stat. L., 699.)
The Secretary of the Treasury had but two alternatives— either to appoint to office, upon the terms of the statute, if there were duties to be performed, or'to leave the office vacant if there were none.
By the urgent deficiency appropriation act of May 1, 1895 (23 Stat. L., 15, 17), under the head of “Indian Office,” it is provided: * * * “ and hereafter no Department or officer *259 of tbe United States shall accept voluntary service for the Government or employ personal service in excess of that authorized by law, except in cases of sudden emergency involving the loss of human life or the destruction of property. ”
That language, though seemingly applicable only to the Indian service, is quite broad enough to apply to the heads of the several Executive Departments; but whether so or not, the law but emphasizes the principle that where the law provides for the doing of certain things by means of officers to be ■ appointed, and the compensation is fixed therefor, that becomes the rule by which the appointing power and the officer appointed is to be guided.
The salary attached to a public office belongs to the incumbent not by force of any contract, but because the law attaches it to the office. {Fitzsimmons v. Brooklyn, 102 N. Y., 536.)
Even assuming that the Secretary might have refrained, in the interest of public economy, from exercising his authority of appointment under the act, notwithstanding the seeming-mandatory provision of the statute, still he did not do that; and it is clear' from his letter that he intended to clothe the claimant with authority to perform the duties of the office. The only way he could do that was in the manner set forth in the statute, and in his letter he cites the act — authority—■ under which he appointed the claimant, and advised him that the appointment would take effect from the date of oath.
The claimant would not have been permitted, after assuming the duties of the office, to have disputed the validity of his appointment as a justification or defense in a criminal prosecution.
It is plain, therefore, that the Secretary intended to, and did, appoint the claimant as special inspector of foreign steam vessels, which appointment took effect from the date of subscribing the oath.
The defendants contend, however, that because the claimant did not give the bond provided for in section 4 of the act under which he was appointed that therefore his tenure was that of a defacto and not a dejure officer, and for that reason he had no legal title to the salary of the office. Some authorities are cited in support of the contention stated, among *260 wbicb are the cases of Williams (23 C. Cls. R., pp. 46, 53); Converse, of United States (21 How., 463); Hall v. Wisconsin (103 U. S., 5).
In the Williams case the claimant was appointed minister resident and consul-general of the United States to Hayti, and his commission therefor was signed and was in the hands of the State Department, where the claimant had taken the oath of office, but by the provision of the Revised Statutes, section 1697, he was inhibited from receiving his commission or entering upon the discharge of the duties of his office until he had given a bond, and hence by his failure to give such bond he was not entitled to his commission, and the court held that he was not therefore entitled to the emoluments of the office.
The defendants also cite the case of the United States v. Delaney (164 U.S. R., 282), affirming the decision of this court (31 C. Cls. R., 44). But the only question in that case was as to whether the register and receiver of a newly created land-office was entitled to compensation from the time he was engaged, under the verbal direction of the Commissioner of the General Land Office, in the necessary preliminary preparation for opening the office for public business, or from the date of such opening only; and the court held that having previously qualified by taking the oath of office and giving bond, he was entitled to be paid during the period of such preliminary preparations.
In the case of the United States v. Eaton (169 U. S. R., 331), affirming the decision of this court (31 C. Cls. R., 158), it was ruled, among other things, that the claimant, who had been appointed vice consul-general by the minister resident and counsul-general at Siam, to perform the duties of the latter during his absence, was entitled to compensation during the time he performed such duties, though no bond was given and approved until thereafter.
In that same case the court, at page 346, in speaking of the contention of the Government that under Revised Statutes, section 1698, it was error to allow the claimant compensation before his bond was approved, the court said:
“It is settled that statutory provisions of the character of those referred to are directory and not mandatory.”
*261 In tbe case of United States v. Bradley (10 Pet., 343, 365), which was a suit on the bond of a paymaster wherein it was contended that the giving of a bond before entering upon the discharge of his duties was a prerequisite, and not haying-done so he was not accountable for the moneys that came into his hands, the court, speaking by Mr. Justice Story, said: “The giving of the bond was a mere ministerial act for the security of the Government, and not a condition precedent to his authority to act as paymaster. Having received the public moneys as paymaster he must account for them as paymaster.”
And so in the case of United States v. Linn (15 Pet., 290, 313), wherein the statute required the claimant, as receiver of public moneys, to execute a bond before entering upon the duties of the office, the court held that “these emoluments were the consideration allowed him for the execution of the duties of the office, and his appointment and commission entitled him to receive this compensation whether he gave any security or not; ” and furthermore, in referring to the case of United States v. Bradley (supra), the court said: “According to this doctrine, which is undoubtedly sound, Linn was a receiver de jtire as well as de facto when the instrument in question was made.”
In the case of the United States v. Flanders (112 U. S. R., 88) a collector of internal revenue was required, before entering upon the duties of his office, to give bond, and before being entitled to the salary was also required to take the oath of office, both of which he failed to do for two months, but in the meantime performed the duties of the office. The court in relation thereto held in substance that while his title to receive the compensation did not arise until he.had taken the oath, still when he did so he was entitled thereto from the date he commenced to perform the duties of the office.
In the present case section 4 of the act under which the claimant was appointed provides—
“That each special inspector of foreign steam vessels shall execute a proper bond, to be approved by the Secretary of the Treasury, in such form and upon such conditions as the Secretary may prescribe, for the faithful performance of the duties of his office.”
*262 It will be observed by that section that the bond was not only to be approved by the Secretary, but that its form and conditions were also to be prescribed by him, so that if none were prescribed by the Secretary the claimant was not in fault in not giving. At all events, his failure to give such bond did not deprive him of any right he might otherwise have had to the compensation of the office.
Therefore when the Secretary, in pursuance of the act referred to, in his letter said “you are hereby appointed to serve in connection with your appointment as local inspector of hulls of steam vessels as a special inspector of foreign steam vessels, without additional compensation, for the port of New Orleans, La., the appointment to take effect from date of oath,” he thereby appointed the claimant to the office, and upon taking the oath prescribed by law, as he did, he became fuliy invested therewith as an officer de jure, though no bond was required or given, and consequently he was entitled to the emoluments thereof unless his acceptance of the appointment without protest and without making any demand for such compensation during his continuance in office operates as a waiver or an estoppel.
It is undoubtedly settled law that where an office is created and the salary fixed by law that “the appointing power has no control beyond the limits of the statutes over the compensation, either to increase or diminish it.” Adams’s Case (20 C. Cls. R., 115, ill), and many other cases there cited to the same effect.
The vital question is, Does the doctrine of waiver or estoppel apply in cases of this kind ?
The claimant by accepting the office and performing the duties thereof without protest and without making any demand for compensation during his continuance in office may in fact have led the Secretary to believe that the conditions he sought to impose in his letter of appointment had been accepted by him.
But manifestly the Secretary of the Treasury had no right to impose such conditions, and in doing so he exceeded his authority, even though he acted from motives of public economy. Hence the claimant’s silence must be considered only in reference to the conditions sought to be imposed by *263 the Secretary, for manifestly bad no such conditions been incorporated in the letter of appointment his failure to demand the salary of the office during his term of service could not be urged as a waiver or as an estoppel.
When the Congress have enacted a law providing for the doing of certain things by means of officers to be appointed therefor at fixed salaries, that becomes the only rule by which such services are to be performed. The question of public economy in respect thereof has been settled by the law, and by that the officer who performs such service is entitled to have his rights measured.
The statute under which the claimant was appointed fixed the salary of his office at $2,000 per anmim, and that he was entitled to, notwithstanding the salary he received as local inspector, as the two offices were not incompatible and they were distinct, each having its own duties and compensation defined by statute. (United States v. Saunders, 120 U. S. R., 126, 129.) Hence the defendants could not have been misled to their injury by the claimant’s silence in respect of the compensation to which he was entitled by law, and over which the appointing power had no control. (United States v. McLean, 95 U. S. R., 750.)
In the interest of the public service.the weight of authority undoudtedly is against the validity of waiving and, perhaps, of pledging official compensation to accrue for services to be rendered, or to satisfy the same by a less amount even though a receipt be given therefor in full. {Fisher’s Case, 15 C. Cls. R., 323.)
If that be true, can it be held that the claimant by his silence waived his right to that which was due him by law, and about which no one had any authority to deprive him of, even by contract? He accepted the office and qualified by taking the oath. He performed the service and the defendants received the benefits thereof.
In the case of Railroad Company v. Dulois (12 Wall., 47, 64) it yas said “ no principle is better settled than that a party is not estopped by his silence, unless it has misled another to his hurt.”
In the Alvord Case (8 C. Cls. R., 364, 369) the authorities *264 on the question of estoppel by the silence of a party are set out quite fully, the substance of which is that no one is permitted to keep silent when in conscience he ought to speak, and .if he does so to the hurt of another he shall be debarred from speaking in defense when conscience requires him to keep silent.
The defendants can not be said to have been misled to their injury by reason of the failure of the claimant to say that he would not accept the office and perform the duties thereof without additional compensation, for the law under which he was appointed, and under which the Secretary acted, also fixed the compensation, and that the claimant was bound to know could not be increased or diminished by the appointing power.
The Secretary having no authority to increase or diminish the salary, he of course had none to take it away altogether, and, therefore, when he appointed the claimant as special inspector to serve without compensation he exceeded his authority, and the claimant was not bound to speak, especially when by declining to serve without compensation his resignation of the office of local inspector might have been called for and the compensation of that office lost to him. In this respect the Secretary and the claimant were not on equal terms. (Swift Company United States, 111 U. S. R., 22, 28; Robertson v. Frank Bros. Co., 132 U. S., 17, 23.)
The Secretary’s letter of appointment should not be construed as an order assigning to duty a man who was not an inspector in law or in fact to examine the vessels of private owners and subject them to the uvisitation” and penalties prescribed by the Revised Statutes, sections 4407,4418, 4421, 4423, and 4424.
The claimant grounds his right to recover on the statute, a law of the Congress, and our duty is simply to give effect to that statute by the application of the facts, and this we have endeavored to do, and in our view of the case the claimant should recover.
Nott, Ch. J., concurred in the opinion of Peelle, J.